THE PULLMAN PALACE CAR CO. v. TAYLOR.

PRACTICE.—*Judgment on Demurrer.*—*Damages to be Assessed on.*—When a defendant elects to stand upon his answer, to which a demurrer has been sustained, the only question for the court is the assessment of the damages.

SAME.—*Supreme Court.*—*Record.*—*Evidence.*—Where, in such case, evidence has been introduced as to the amount of damages to be assessed, but is omitted from the record on appeal to the Supreme Court, no question can arise as to the amount of damages assessed.

RAILROAD.—*Passenger.*—*Sleeping-Car Berth.* — *Ticket.*—*Change of Cars.*— *Action for Damages.*—A passenger purchased, of a corporation engaged in furnishing sleeping cars for the use of passengers over a certain continuous line of railroads, a ticket purporting to entitle him to accommodations between certain stations, in a certain sleeping car, and in a berth to be designated on the ticket, by the conductor of such car, in the manner directed by the ticket. Upon entering that car at the starting-point, a certain berth was assigned to him, and designated on the ticket, in the manner provided by it, by the conductor, but, before arriving at his destination, such car was removed from the train by the defendant, and a different berth in a different sleeping car was offered to him, which he refused, and sued such corporation for a breach of its contract.

*Held,* that, by the contract evidenced by the ticket, the passenger was entitled to a continuous passage in such berth, on such car, or in an equally desirable berth on an equally safe, convenient and comfortable sleeping car.

SAME.—*Defence.*—*Contract between Sleeping-Car Company and Railroad Company.*—An answer in such action, alleging that the defendant had simply furnished such car to the railroad companies, for the use of passengers, for a certain rent, pursuant to a contract between it and such companies, but admitting that the change of cars was made as alleged in the complaint, is insufficient.

From the Marion Superior Court.

*C. Baker, T. A. Hendricks, O. B. Hord* and *A. W. Hendricks,* for appellant.

*C. W. Smith* and *R. O. Hawkins,* for appellee.

WORDEN, J.—Complaint as follows :

" Harry Taylor complains of the Pullman Palace Car Company, a corporation engaged in the business of carrying passengers as common carriers throughout the United States, and particularly between the cities of Indianapolis, in the State of Indiana, and New York, in the State of

The Pullman Palace Car Co. *v.* Taylor.

New York, and were so engaged on and prior to the 31st day of March, 1874. That, on said 31st day of March, 1874, this plaintiff engaged passage on one of the cars of the defendant, commonly known as a Pullman Palace or Sleeping Car, and selected his berth in said car, which berth was the lower berth in the centre of said car, and known as berth 'Lower Six.' That said berth was preferable to other berths in said car, or other cars, as being more comfortable, and safer in case of accidents. That, for his passage to the city of New York, in said berth in said car, he paid to the defendant the sum of five dollars, and, in consideration of said payment of said sum of five dollars, the defendant undertook and agreed to carry the plaintiff from Indianapolis to New York, in said car and in said berth, and gave to this plaintiff their certain ticket or check in print, a copy of which is as follows :

| | | | Berth Check. | Upper. | Lower. |
|---|---|---|---|---|---|
| 1 | 18 | Jan. | | | |
| 2 | 19 | Feb. | The Sleeping Car Conductor will punch out, on the following Diagram, the date and the amount of room to which the holder of this check is entitled. | | |
| 3 | 20 | Mar. | | | 1 |
| 4 | 21 | | | 1 | 2 |
| 5 | 22 | Apr. | *CAR* | 2 | 3 |
| 6 | | | | 3 | 4 |
| 7 | 23 | May. | *96* | 4 | 5 |
| 8 | 24 | June. | | 5 | 6 |
| 9 | | | *From* | 6 | 7 |
| 10 | 25 | July. | *Indianapolis* | 7 | 8 |
| 11 | 26 | Aug. | *To* | 8 | 9 |
| 12 | 27 | | *New York.* | 9 | 10 |
| 13 | 28 | Sept. | | 10 | 11 |
| 14 | 29 | Oct. | *$5.00.* | 11 | 12 |
| 15 | | | | 12 | 13 |
| 16 | 30 | Nov. | *W. T. Cannon,* | 13 | 14 |
| 17 | 31 | Dec. | *Conductor.* | 14 | |
| | | | C          62913 | A B C | A B C |

"On which ticket, on the diagram thereof, the conductor of the said car then punched, in the column of months, the month of March, and, in the days of the month, the 31st, and, in the columns designated ' Upper ' and 'Lower,' the figure 6 ; thereby intending to express that the holder of said ticket was thereby entitled to a passage from Indianapolis to New York, on car No. 96, in lower berth No. 6, starting March 31st, for which he had paid the sum of five dollars, and that said diagram and ticket was received by this plaintiff as expressing such agreement.

" And the plaintiff further says, that afterward, while on said car, occupying said berth, *en route* for the city of New York, according to the terms of said agreement, the said plaintiff was notified by the agents of the defendant in charge of said car, that he must surrender and give up his said berth in said car, and take passage in another car in said train, and that said car No. 96 would be detached from said train, and would not be taken to New York ; that, in fact, said car was so detached and left behind, and this plaintiff was compelled to remove his baggage and take passage in another car of the plaintiff's ( *sic* ) in said train.

" That, in said last named car, the berth corresponding to the one occupied by this plaintiff in car No. 96, and to which he was entitled from Indianapolis to New York, was occupied by another party, who had a prior right thereto, and this plaintiff was thus deprived of his said berth, and the defendant did not provide him any other accommodation or berth in said car, similar or equal in comfort and safety to those to which he was entitled, under his agreement, in said car No. 96, and the said defendant wholly failed, neglected and refused to provide him any berth or seat in said car, save the upper berth over the hind axle of said car, which was an uncomfortable and dangerous position to occupy. That this plaintiff refused to occupy such berth on account of its so being uncomfort-

able and dangerous; and this plaintiff was compelled to and did leave said sleeping or palace car, and was compelled to take passage in a common passenger car, conducted with said train, where there was no accommodation for passengers, similar to, or equal in comfort and safety to, those provided by said defendant by said car and berth in which this plaintiff engaged his passage from Indianapolis to New York; that, by reason of said failure of said defendant to fully comply with her said agreement and undertaking, this plaintiff was deprived of sleep during the remainder of his journey from Indianapolis to New York; and suffered great discomfort and annoyance and vexation, both of body and of mind, and injury to his health, so as to render him disqualified and unable to properly and successfully attend to business for the period of twenty-four hours after his arrival in the city of New York.

" Wherefore he says, by the reason of the fault, negligence and wrongdoing of the defendant, he has been damaged in the sum of four hundred and ninety-five dollars, for which sum, together with his costs, he prays judgment."

The defendant demurred to the complaint, for want of sufficient facts, but the demurrer was overruled, and exception taken.

It then answered in three paragraphs, in the first of which it is averred, that—

" It is a corporation, organized and existing under and by authority of a certain act of the General Assembly of the State of Illinois, approved February 22d, 1867, and that said company, among other powers, possesses those conferred by the fourth section thereof, which is as follows:

"' SECTION 4. The said corporation shall have power to manufacture, construct and purchase railway cars, with all convenient appendages and supplies for persons travelling

therein, and the same may sell or use, or permit to be used, in such manner and upon such terms as the said company may think fit and proper.'

" It further avers, that, at the time of the happening of the grievances alleged in the complaint, the Pittsburgh, Cincinnati and St. Louis Railway Company was operating a certain railroad extending from the city of Indianapolis, in the State of Indiana, through the States of Ohio and West Virginia, to the city of Pittsburgh, in the State of Pennsylvania, and that the Pennsylvania Railroad Company was then operating a railroad extending from said city of Pittsburgh to the city of New York, in the State of New York, and said railway companies were carriers of passengers between said points; that, at said time and prior thereto, the defendant was furnishing drawing-room and sleeping cars to said companies, to be operated by them upon said roads between said points, under and by virtue of a certain written and printed contract with said railway companies; that, by said contract, the defendant was to furnish the drawing-room and sleeping cars, sufficient to meet the requirements of travel to be used by said railway companies in the transportation of passengers; that, under and by virtue of said contract, the defendant was to keep the carpets, upholstering and bedding of said cars in good order and repair, except repairs and renewals made necessary by accident or casualty happening to said cars while running upon said railroads, and said railway companies thereby agreed to repair all damages to said cars, of every kind occasioned by accident or casualty.

" And the defendant thereby agreed, at its own cost and expense, to furnish one or more employees, as might be needful, upon each of said cars, whose business it should be to collect fare for the accommodations in said cars, and generally to wait upon passengers therein, and provide for their comfort. And it was also thereby agreed, that said

employees of the defendant should be governed by, and subject to, the rules and regulations of the said railway companies, which then existed or might thereafter be adopted from time to time, for the government of their own employees.

"And it was thereby agreed, that said railway companies would haul said cars of the defendant on their passenger trains, in such manner as would best accommodate the passengers desiring to use said cars, and that said railway companies should, at their own expense, furnish fuel for said cars, and material for the lights used therein, and should wash and cleanse said cars, and keep the same in good running order and repair, including renewals of worn-out parts, and all things appertaining to said cars necessary to keep them in first-class condition, except as hereinbefore stated.   And it was also thereby agreed that said railway companies would furnish to the defendant, at convenient points, room and conveniences for airing and storing bedding.

"And it was then and thereby agreed, by and between said railway companies and the defendant, that it should be entitled to collect, from each and every person occupying said cars, such sums as were usual on competing lines furnishing equal accommodations, and that such rules and regulations should be mutually agreed upon as would most favor the renting of seats and couches in said cars.

"And it was then and thereby agreed, by and between said railway companies and the defendant, that the defendant might place its tickets for seats and couches for sale in such of the railroad ticket offices of said railway companies as might be mutually agreed upon, and that such service should be performed by and as part of the general duties of the ticket agents of said railway companies, without charge to the defendant.

"And it was further thereby agreed, that said agreement

should last for fifteen years from the 27th day of January, 1870.

"And it was further thereby agreed, that, should the defendant fail to keep in good and cleanly condition the upholstering and bedding of said sleeping cars, then and in that case said railway companies should give the defendant timely notice to perform said duties, and should require the defendant to make good such deficiency; if, after such notice, the said defendant should fail, within a reasonable time, to make good such deficiency, then and in that case said railway companies should have the option to declare said contract ended and no longer in force.

" The defendant avers, that, at the time mentioned in the complaint, the cars of the defendant were upon said roads from said city of Indianapolis to the city of Pittsburgh, and thence to the city of New York, and were being operated upon said roads under and by virtue of said contract, and according to its terms; that said railway companies were entitled to receive compensation for the carrying of passengers, and the defendant was only entitled to receive compensation for the sitting and sleeping accommodations provided in its cars; that the car No. 96, mentioned in the complaint, was one of the defendant's cars, operated by said railway companies under said contract; that the defendant made no contract with the plaintiff to carry him from Indianapolis to New York, or over any portion of said route, and received from him no compensation for any such service, and that whatever contract there was for such service was between the plaintiff and said railway companies.

" The defendant avers, that it did not contract with the plaintiff to carry him from the city of Indianapolis to the city of New York, and it avers that it did contract with him to furnish him sleeping-car accommodations from Indianapolis to the city of New York, and did deliver to him

the ticket described in the complaint, and punched as therein stated, and made with him no other contract, either express or implied.

" The defendant says, that, upon said car No. 96 reaching Pittsburgh, there were only six persons therein for points east of Pittsburgh, and there were other sleeping cars of the defendant in the train being hauled to New York over said route, in all particulars equal to No. 96, furnishing ample accommodations for them, and said car No. 96 was left at said city of Pittsburgh, and the defendant was unable to furnish the plaintiff, in either of said other cars, lower berth No. 6, because said berth was already taken, and was occupied upon each of the other cars, but they offered and tendered him other lower berths upon the other cars, equally safe and comfortable as the one he had occupied in car No. 96, but the plaintiff refused to accept and occupy the same, and refused to accept any berth upon the other cars, unless he was furnished a berth located as No. 6 was in car No. 96, and this the defendant could not do, for the reason aforesaid; that, upon the plaintiff's refusal to accept the accommodations aforesaid, that were offered him by the defendant, the defendant offered to return to him a proportion of the amount paid for sleeping-car accommodations from Indianapolis to New York, that the distance between Pittsburgh and New York bore to the distance between Indianapolis and New York, and the plaintiff rejected said offer.

" The defendant further avers, that the price paid by the plaintiff for lower berth No. 6, in car No. 96, was the minimum price charged and received for the use of all other berths in said car.

" And the defendant denies all the allegations of the complaint inconsistent with the allegations of this paragraph."

The second is like the first, to the point where the description of the contract between the appellant and the railway companies ends. The paragraph then continues as follows :

" The defendant avers, that, at the time mentioned in the complaint, the cars of the defendant were upon said roads from said city of Indianapolis to the city of Pittsburgh, and thence to the city of New York, and were being operated upon said roads under and by virtue of said contract, and according to its terms; that said railway companies were entitled to receive compensation for the carrying of passengers, and the defendant was only entitled to receive compensation for the sitting and sleeping accommodations provided in its cars; that the car No. 96, mentioned in the complaint, was one of the defendant's cars, operated by said railway companies under said contract; that the defendant made no contract with the plaintiff to carry him from Indianapolis to New York, or over any portion of said route, and received from him no compensation for any such service; and that whatever contract there was for such service was between the plaintiff and said railway companies.

" The defendant avers, that it did not contract with the plaintiff to carry him from the city of Indianapolis to the city of New York, and it avers that it did contract with him to furnish him sleeping-car accommodations from Indianapolis to the city of New York, and did deliver to him the ticket described in the complaint, and punched as therein stated, and made with him no other contract, express or implied.

" The defendant further says, that, when said car No. 96 reached Pittsburgh, there were only six persons therein for points east of Pittsburgh, and that there were in said car twelve sections, six being upon each side, and each section consisting of two berths, an upper and a lower one, thus furnishing twenty-four berths, each capable of accommodat-

ing two persons; that there were in the train, to be hauled over said route from Pittsburgh to the city of New York, two cars of defendant in all respects equal to said car No. 96, with vacant berths, furnishing ample accommodations to the plaintiff and said other occupants of car No. 96, and the defendant desired to and did detach said car No. 96 from said train at Pittsburgh; that the two cars to which the defendant transferred said passengers from said car No. 96 were No. 269, a sleeping car from Louisville to New York, and No. 289, a drawing-room and sleeping car from Chicago to New York; that the defendant was unable to furnish the plaintiff lower berth No. 6 in either of said cars, because said berth was already taken and occupied, but offered him the lower berth in section No. 1, and upper berth in section No. 8, in said car No. 269, the only berths vacant in said car, and also lower berth in the drawing-room of No. 289; said berths so offered the plaintiff were comfortable and safe berths, and the charge for the use and occupation of them was as great as that of lower berth No. 6 in car No. 96.

" But the plaintiff informed the defendant, that, unless he could have the use and occupation of lower berth No. 6 in one of the other cars or one located just as lower berth No. 6 was, he would not accept any sleeping berth in said cars Nos. 269 and 289, and refused to accept the accommodations offered. The defendant then offered to return to the plaintiff a proportion of the amount paid by the plaintiff for a sleeping berth from Indianapolis to New York that would correspond with the distance from Pittsburgh to New York, as corresponded with the distance from Indianapolis to New York, but the plaintiff refused to receive the same. The defendant further says, that, as the defendant was unable to furnish the plaintiff lower berth No. 6 in said cars Nos. 269 and 289, he refused to accept any other berth, and left the car of the defendant.

" And the defendant denies all the allegations of the complaint inconsistent with the allegations of this paragraph."

The third is the same as the first to the point where the description of the contract between the appellant and the railway companies ends.

The paragraph continues as follows :

" The defendant avers, that, at the time mentioned in the complaint, the cars of the defendant were upon said roads from said city of Indianapolis to the city of Pittsburgh, and thence to the city of New York, and were being operated upon said roads under and by virtue of said contract and according to its terms ; that said railway companies were entitled to receive compensation for the carrying of passengers, and the defendant was only entitled to receive compensation for the sitting and sleeping accommodations provided in its cars ; that the car No. 96, mentioned in the complaint, was one of the defendant's cars, operated by said railway companies under said contract ; that the defendant made no contract with the plaintiff to carry him from Indianapolis to New York, or over any portion of said route, and received from him no compensation for any such service, and that whatever contract there was for such service, was between the plaintiff and said railway companies.

" The defendant avers, that it did not contract with the plaintiff to carry him from the city of Indianapolis to the city of New York, and it avers that it did contract with him to furnish him sleeping-car accommodations from Indianapolis to the city of New York, and did deliver to him the ticket described in the complaint, and punched as therein stated, and made with him no other contract, express or implied.

" The defendant further says, that, when said car No. 96 reached Pittsburgh, there were only six persons therein

for points east of Pittsburgh, and that there were in said car twelve sections, six being upon each side, and each section consisting of two berths, an upper and a lower one, thus furnishing twenty-four berths, each capable of accommodating two persons; that there were in the train, to be hauled over said route from Pittsburgh to the city of New York, two cars of defendant, in all respects equal to said car No. 96, with vacant berths, furnishing ample accommodations to the plaintiff and said other occupants of No. 96, and the defendant desired to and did detach said car No. 96 from said train at Pittsburgh; that the two cars, to which the defendant transferred said passengers from said car No. 96, were No. 269, a sleeping car from Louisville to New York, and No. 289, a drawing-room and sleeping car from Chicago to New York; that the defendant was unable to furnish the plaintiff lower berth No. 6 in either of said cars, because said berth was already taken and occupied, but offered him the lower berth in section No. 1, and upper berth in section No. 8, in said car No. 269, the only berths vacant in said car, and also the lower berth in the drawing-room of No. 289, and said berths so offered the plaintiff were comfortable and safe berths, and the charge for the use and occupation of them was as great as that of lower berth No. 6, in car No. 96.

" But the plaintiff informed the defendant, that, unless he could have the use and occupation of lower berth No. 6 in one of the other cars, or one located just as lower berth No. 6 was, he would not accept any sleeping berth in said cars Nos. 269 and 289, and refused to accept the accommodations offered. The defendant then offered to return to the plaintiff a proportion of the amount paid by the plaintiff for a sleeping berth from Indianapolis to New York that would correspond with the distance from Pittsburgh to New York, as corresponded with the distance from Indianapolis to New York, but the plaintiff refused

to receive the same. The defendant further says, that, as the defendant was unable to furnish the plaintiff lower berth No. 6, in said cars Nos. 269 and 289, he refused to accept any other berth, and left the car of the defendant.

"The defendant avers, that the train, of which said car No. 96 constituted a part, arrived at Pittsburgh about noon of the 1st day of April, 1874, and immediately thereafter proceeded to the city of New York; that said railway company had a train that regularly left said city of Pittsburgh for the city of New York about midnight, and the defendant is unable to give the exact time of the starting of the said train from Pittsburgh, and it was the custom of said railway company to have connected with said train a sleeping car of the defendant for the accommodation of the travelling public desiring sleeping-car accommodations who were being transported by said railway company upon said train; that the sleeping car attached to said train leaving Pittsburgh on the night of said 1st day of April was a car of defendant, known as double-drawing-room car No. 129; that, prior to the arrival of said car No. 96 at Pittsburgh, the Thomas Orchestra Troupe had contracted with said Pennsylvania Railroad Company to transport them from the city of Pittsburgh to the city of New York, upon the train that left said city of Pittsburgh about midnight of the 1st day of April, 1874, and with the defendant for sleeping-car accommodations while being thus transported, and said railway company contracted with said troupe that they should thus be transported in said car No. 129, and said defendant, because of said contract with said railway company, contracted with them that they should be furnished with sleeping-car facilities, it being desired by said troupe that they should be transported together as one party, and their number was such as to fill said car, and said car 129 was used as contracted for in the transportation of said troupe by said midnight train. In consequence

of said car 129 being exclusively used in furnishing accommodations to said troupe, it became and was necessary to attach another sleeping car to said midnight train, for the purpose of accommodating such of the travelling public being transported thereon as might desire sleeping-car accommodations; and the defendant says that it became and was necessary, to accommodate the travelling public being transported on said midnight train, and who desired sleeping-car accommodations, to provide a car in addition to said car 129 ; that, to secure this accommodation to the travelling public, it was necessary to use said car No. 96, and said car No. 96 was detached from the train in which it had been drawn from Indianapolis to Pittsburgh, on its arrival at the latter city, as hereinbefore stated, for the purpose of being attached to said midnight train, and was so used as a part of said midnight train from the city of Pittsburgh to the city of New York, in the transportation of passengers by said railroad company, between said points, and in the accommodation of said passengers with sleeping-car accommodations by said defendant; that said plaintiff, upon his arrival at Pittsburgh, remained upon the train upon which he arrived, and was transported to the city of New York thereon.

"And the defendant denies all the allegations of the complaint inconsistent with the allegations of this paragraph."

Demurrers were sustained to each of the several paragraphs of answer, and the defendant excepted. The defendant elected to stand on its answer and declined to answer further. Thereupon, says the record, the cause was submitted to the court for trial. This could only mean that the cause was submitted to the court for the assessment of damages, inasmuch as there was no issue of fact to try. The court assessed the plaintiff's damages at fifty dollars, and rendered judgment accordingly.

The judgment thus rendered at special term was affirmed at general term.

It may be observed, as preliminary to the consideration of the main questions involved, that no question can arise as to the amount of damages assessed, the evidence not being in the record, and no question being preserved in relation thereto.

We do not find any objection made in the brief of counsel for the appellant to the complaint, which to us seems to be good.

We pass to the answer.

It may be seen, that, in the complaint, it was alleged that the defendant was a corporation engaged in the business of carrying passengers as a common carrier.

The counsel for the appellant controvert the proposition that it is a common carrier. We think, for the purposes of the case, it is not necessary to determine whether the appellant is to be regarded as a common carrier, or otherwise.

The defendant did not undertake to transport the plaintiff from Indianapolis to New York, either as a common carrier or otherwise. The contract for transportation was made with the railroad company or companies of whom he purchased tickets for the transportation.

It is alleged in each paragraph of the answer that the defendant did contract with the plaintiff to furnish him sleeping-car accommodations from Indianapolis to New York, and did deliver to him the ticket described in the complaint, and punched as therein stated, and made with him no other contract, express or implied.

It seems to us to be clear, that the contract with the plaintiff imposed the obligation upon the defendant, to furnish the sleeping-car accommodations for a continuous trip from one point to the other, so that the plaintiff could go on with the continuous train, as he might be bound to

do on the purchase of an ordinary railroad ticket without provision for stopping off. See *Dietrich* v. *The Pennsylvania R. R. Co.*, 71 Pa. State, 432 ; *The Oil Creek, etc., Railway Co.* v. *Clark*, 72 Pa. State, 231 ; *Cheney* v. *The Boston and Maine R. R. Co.*, 11 Met. 121 ; *The State* v. *Overton*, 4 Zab. 435.

It also seems to us, that the defendant was bound by the contract evidenced by the check set out and punched as it was, not merely to furnish sleeping-car accommodations for the trip, but to furnish the lower berth No. 6, in the particular car No. 96, or at least to furnish an equally desirable berth in the same locality, in another car of equal safety, convenience and comfort.

This is the plain legal effect of the contract. See *The Terre Haute, etc., R. R. Co.* v. *Fitzgerald*, 47 Ind. 79.

It was for the particular berth in the car that the plaintiff paid his money. That berth was the one which, by the contract, he was to have. There is, doubtless, some choice in berths; and, whether from mere caprice or from good reason the plaintiff chose and paid for that berth, he was entitled to have it. The defendant could not, without breach of its contract, deprive him of that berth, although it offered to furnish him another, any more than the plaintiff could have claimed another, if he had happened to change his mind and desire another.

This being the legal effect of the contract, we proceed to consider whether any defence is set up in any of the paragraphs of answer. If the defendant furnished the sleeper to be taken through by the railroad companies, and if the failure to take it through was solely the fault of the latter, the contract of the defendant may not have been broken, for, as we have seen, the defendant did not contract for transportation.

By the allegations of the several paragraphs of answer, it does not appear to have been any fault of the railroad companies that the sleeper No. 96 was not taken through

with the train that went on. On the contrary, it is expressly averred in the second and third paragraphs, that the defendant caused the sleeper mentioned to be detached from the train at Pittsburgh. This also is the fair inference from what is alleged in the first paragraph, in which it is averred that " said car No. 96 was left at said city of Pittsburgh, and the defendant was unable to furnish the plaintiff, in either of said other cars, lower berth No. 6," etc.

It clearly enough appears that the defendant failed to furnish the plaintiff with the sleeping car No. 96 beyond Pittsburgh; and that it failed to furnish him beyond that point with a berth in any other car, corresponding with lower berth No. 6 in that car, which it seems the plaintiff was willing to accept. The defendant, therefore, broke its contract with the plaintiff. This breach may have been induced by a desire on the part of the defendant to accommodate a larger number of persons with sleeping-car conveniences; but this can be no legal justification of the breach.

We have been furnished by the appellant with a manuscript opinion in some cases, delivered by Judge BILLINGS of the Circuit Court of the United States for the District of Louisiana, which in some respects, as we think, strongly supports the view we have taken. The principal case was that of *Thomas Simms* v. *Pullman Southern Car Co.* The plaintiffs had bought sleeping-car tickets from New Orleans to Philadelphia. The train which took the sleeper failed to go beyond Washington, where it stopped on account of riots. The plaintiffs sued for this failure, and there had been a trial and verdict for the defendant. The court said, among other things, in delivering its opinion on a motion for a new trial:

" The court construed the contract into which the defendants entered by the sale of the sleeping-car tickets as follows: That, in the first place, they

obligated themselves to have, throughout the entire line, as indicated upon their tickets, suitable cars to allow an uninterrupted transit. Secondly, that they obligated themselves to have provided such connections between the railroads intervening between the termini and the route indicated upon their tickets, as, according to the regular trains running upon such roads, would permit a continuous transit. Thirdly, that they obligated themselves that these roads were so situated, manned and run, as, according to the regularly established trains, admitted of a continuous passage over the route specified in the tickets which were sold. Fourthly, that they obligated themselves to furnish proper attendance on such cars, and that they would stop with sufficient frequency, and for a sufficient length of time, to allow passengers to take their meals.

" The court further instructed the jury, that, if defendants had shown that they performed these obligations, that they furnished suitable cars, that proper connections over the roads which were operated, so as, from day to day, to have allowed—according to their ordinary trains—a continuous passage, and that, notwithstanding all this, one of the roads, to wit, the Baltimore and Ohio road, refused or failed to send forward any train of cars from Washington to Philadelphia, on account of apprehensions of the riot, and that this refusal or failure was the result of no fault of the defendants, who had an adequate car in readiness to proceed, in that case they had performed all the obligations which they had undertaken, so far as they are connected with the passage of the plaintiffs. The gist of these instructions was, that the contract, on the part of the defendants, was not one for transportation ; that that was a distinct contract made between the plaintiffs and the various railroads whose tickets they had purchased, and that the obligations on the part of the

defendants, though connected with the transportation of the plaintiffs, were only such as have been enumerated. * * * I see no reason, after further examination of the case, to change the views which I entertained at the trial."

The appellant has cited, to the point that the special damages claimed by the plaintiff are too remote, the following cases: *Hamlin* v. *The Great Northern Railway Co.*, 1 H. & N. 408; *Hobbs* v. *The London, etc., Railway Co.*, L. R., 10 Q. B. 111; *The Indianapolis, etc., R. W. Co.* v. *Birney*, 71 Ill. 391.

But the plaintiff was entitled to some damages for the breach of the contract; and, as we have seen, no question is properly presented as to the amount recovered.

No error was committed in sustaining the demurrer to the several paragraphs of answer, nor is there any error in the record.

The judgment below is affirmed, with costs.