# LUKE NEVIN

## *v.*

# THE PULLMAN PALACE CAR COMPANY.

*Filed at Springfield March 29, 1883.*

1. ACTION ON THE CASE, *and action ex contractu—of the distinction between them.* The *gravamen* of the charge in an action on the case is the tort or wrong of the defendant, notwithstanding such tort or wrong may also be a breach of an express or implied contract, whereas in an action *ex contractu* the *gist* of the action is the breach of the contract, without regard to the tortious character of the act of the defendant.

2. The general principle seems to be, where the duty for the breach of which the action is brought would not be implied by law by reason of the relations of the parties, whether such relations arose out of a contract or not, and its existence depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract, and not in tort,—when otherwise, case is an appropriate remedy. Assumpsit is a concurrent remedy with case in all cases where there is an express or implied contract.

3. SAME—*when an action on the case lies—against a common carrier.* An action on the case will lie for a mere nonfeasance against persons exercising certain public trades or employments, independently of any contract relation, as, when a common carrier, having the requisite means of transportation, refuses to carry goods or passengers.

4. SLEEPING CAR COMPANY—*as a carrier—duty and liability—remedy of passenger.* A sleeping car company operating and running sleeping coaches over railroads, by force of law, independently of contract, owes duties to the public as a common carrier, one of which is that it shall treat all persons whose patronage it has solicited with fairness and without unjust discrimination, and it is liable in case for a breach of such duty to the party injured thereby.

5. Where a passenger, who, under the rules of such company, is entitled to a berth upon payment or tender of the usual fare, and to whom no personal objection attaches, enters the company's sleeping car at a proper time for the purpose of procuring accommodation, and in an orderly and respectful manner applies for a berth, offering to pay or tendering the customary price therefor, the company is bound by law to furnish it, provided it has a vacant one at its disposal.

6. Where a berth in a sleeping car is engaged, the passenger impliedly agrees to conduct himself in a quiet and orderly manner, to take proper care of the berth while in his possession, and to give up the same at the end of his journey; and the carrier company impliedly stipulates to use all reason-

able and proper means to preserve order and decorum in the sleeper, to furnish and keep on hand such supplies and conveniences as are usually found in like sleepers, and are necessary to the health, comfort and safety of passengers, and also to permit the passenger to quietly and peaceably occupy his berth for the time engaged. And case lies for the breach of such implied contract against the carrier, as well as assumpsit.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. TIPTON & RYAN, for the plaintiff in error:

The averments of the declaration show that the defendant was engaged in a public employment, as a regular business, for hire, and so held itself out to the traveling public.

A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place. This may be carried on at the same time with other business. *Dwight* v. *Brewster*, 1 Pick. 53; *F. and M. Bank* v. *Ch. Trans. Co.* 23 Vt. 186; 2 Parsons on Contracts, 104, 158, 178; 2 Hilliard on Torts, 538; *Parmalee* v. *Lowitz*, 74 Ill. 116.

A common carrier need not be the owner of the conveyance employed in the business. *Buckland* v. *Adams Express Co.* 97 Mass. 124; *Lowell Wire Fence Co.* v. *Sargeant*, 8 Allen, 189; *Sherman* v. *Wells*, 28 Barb. 403; *Christenson* v. *American Express Co.* 15 Minn. 270; *Rogers* v. *Wheeler*, 43 N. Y. 598; *Dickinson* v. *Winchester*, 4 Cush. 114; *Belger* v. *Dinsmore*, 51 Barb. 69; *Verrier* v. *Sweitzer*, 32 Pa. St. 208; *Place* v. *Union*, 2 Hilt. 19; *Mercantile, etc.* v. *Chase*, 1 E. D. Smith, 115; 1 Hilliard on Torts, sec. 1.

There is an implied engagement on the part of public carriers of persons not to refuse those who apply for seats by their conveyance, the privilege of traveling in such manner, provided there is room for them, and a tender of or offer to pay the fare is made at the time. Angell on Carriers, secs.

524, 418; *Brotherton* v. *Wood*, 3 Bro. & Bing. 54; *Pickford* v. *Grand Junction R. R. Co.* 8 M. & W. 372; *Bennett* v. *Dutton*, 10 N. H. 481; *Tarbell* v. *Central Pacific R. R. Co.* 34 Cal. 616; 3 Kent's Com. sec. 599; *Frink* v. *Schroyer*, 18 Ill. 419.

Plaintiff in error has properly declared in case. A party may sue in assumpsit, according as the neglect of duty or breach of promise is intended to be relied upon as the cause of injury. Angell on Carriers, sec. 422; *Brotherton* v. *Wood*, 3 Bro. & Bing. 54; *Griffin* v. *Farwell*, 20 Vt. 151.

An action on the case includes assumpsit as well as tort. 1 Chitty's Pleading, sec. 182; *Hathorn* v. *Calef*, 53 Maine, 471; *Albert* v. *Blue*, 10 B. Mon. 92.

Defendant in error promised to furnish appellant a berth and conveyance therein, and by designating and assigning the berth, commenced upon its undertaking, and case lies for the refusal to perform that undertaking. *Hyde* v. *Moffat*, 16 Vt. 271; *Frink et al.* v. *Schroyer*, 18 Ill. 419; *Bufft* v. *Troy and Boston R. R. Co.* 36 Barb. 420; Edwards on Bailments, sec. 699.

For cases recognizing the Pullman Palace Car Company as a common carrier, see *Pullman Palace Car Co.* v. *Baker*, 4 Col. 344; *Welch* v. *Pullman Palace Car Co.* 1 Buff. (N. Y.) 457.

Messrs. FIFER & PHILLIPS, for the defendant in error, argued that the Pullman Palace Car Company was not a common carrier, in any such sense as would authorize the law to interpose, and, upon grounds of public policy, impose an obligation to exercise its calling upon proper application, independently of any contract.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action on the case, brought by Luke Nevin, the plaintiff in error, in the circuit court of McLean county, against the Pullman Palace Car Company, the defendant in

error, for refusing to permit him to occupy a sleeping berth in one of its cars, which had been assigned to him, and which he was ready and offered to pay for. The circuit court sustained a general demurrer to the declaration, and the plaintiff electing to stand by his declaration, judgment was entered against him for costs, which, on appeal, was affirmed by the Appellate Court for the Third District, and the plaintiff in error brings the record here for review.

The declaration, omitting mere formal averments and unnecessary verbiage, charges, in substance, that the plaintiff, on the 4th day of August, 1881, at Dubuque, Iowa, purchased of the Illinois Central Railroad Company, for his niece, wife and himself, respectively, three first-class passenger tickets over that company's railway, from Dubuque, Iowa, to Chicago, this State; that having provided himself with these tickets, he, together with his wife and niece, about ten o'clock of the night of that day, and just before the train from Dubuque to Chicago started out, entered a sleeping car called "Kalamazoo," belonging to and constituting a part of said train, which said sleeping car was then in the possession and under control of the defendant; that upon entering the car he engaged of the conductor of said car two lower berths, at one dollar and fifty cents each; that the conductor thereupon assigned one berth to his niece, and one to plaintiff and his wife, promising to have them made up a little later in the night; that he and his wife took the seats in the berth assigned to them, and remained sitting up, in an orderly manner, until about twelve o'clock, frequently, in the meantime, requesting the conductor to have the berths made up, so they could retire to rest, and at the same time tendering to him the price agreed to be paid therefor; that on the arrival of the train at Lena, this State, about the hour just stated, plaintiff temporarily left his seat, and stepped out on the platform of the sleeper, intending to return immediately to his berth, when the conductor instantly closed and secured

the outer doors of said sleeper, and thereby prevented him from again entering the same; that plaintiff endeavored to open said doors and reënter said car, and frequently requested the conductor to permit him to do so, but that said conductor, instead of complying with his request, removed his satchel, coats and shoes from the berth so assigned to him and his wife, to another car, and ejected the latter from said sleeper, by means of which plaintiff was compelled to take and occupy a seat in a common passenger car on said train till its arrival in Chicago, by reason of which plaintiff was deprived of his rest and sleep, in consequence of which "he became exceedingly weary and sick, and was greatly humiliated," etc.; that his expulsion from his berth in the manner stated was done willfully and maliciously, and that the only reason assigned by the conductor for refusing the price of the berths was, "that they were not made up."

It is not claimed or pretended, as we understand counsel, that the facts alleged in the declaration do not show a good cause of action, but the claim rather is, that they disclose a right to recover in assumpsit, and not in case,—or, in other words, the contention is, that the plaintiff has misconceived his action; that the only wrong complained of consists of a breach of an express contract, and therefore the action should have been brought in form *ex contractu,* and not in form *ex delicto,* as it was.

We shall not attempt a review of the authorities, with a view of extracting from them some general principle or rule by which the question in hand may be satisfactorily solved, but shall content ourselves with adverting to such general rules and principles relating to the subject as are fully established by the authorities, and which we regard as conclusive of the question. We have been led to adopt this course mainly from two considerations. In the first place, the cases bearing on the question are so very numerous that a general review of them would be an almost endless under-

taking; and in the next place, it would be impossible to harmonize all that has been said by the courts, even of the highest character, in attempting to define the true and exact limits of an action on the case.

To proceed, then, it is agreed by all the authorities the *gravamen* of the charge in an action on the case is the tort or wrong of the defendant, notwithstanding such tort or wrong may be also a breach of an express or implied contract, whereas in an action *ex contractu* the *gist* of the action is the breach of the contract, without regard to the tortious character of the act of the defendant. It follows, therefore, if there is a right of recovery at all in this case, it must be upon the ground the defendant has been guilty of some tort or wrong resulting in damage to the plaintiff. That the conduct of the defendant was wrong and indefensible, and that the plaintiff was subjected to great inconvenience and suffering in consequence of it, is not, and can not be, denied; but the contention is, that all the defendant did on the occasion was a mere breach of the special contract between the parties, and that the remedy therefore is on the contract, and not in tort,—and this is the vital question in the case.

Without stopping, for the present, to inquire whether the position of the defendant is well founded to the extent claimed, but conceding it to be so for the purposes of the argument, is it true, as a universal proposition, that this form of action will not lie in any case where the conduct complained of is a direct breach of an express contract? Certainly not. A simple illustration will demonstrate the fallacy of such a position. Suppose A contracts with B to keep the latter's horse for an indefinite period at fifty cents a day, the horse to be returned to B on demand, and A, after having been paid all charges for the keep of the horse, should refuse to redeliver him to B, on demand, no one, in such case, would question for a moment the right of B to maintain an action of trover against A for the horse, which is one species of the

action on the case,—and yet, in the case supposed, the refusal
of A to redeliver the horse, the real cause of action is, in
the strictest sense of the term, a direct breach of the special
contract between the parties.    While the fact that the act or
acts complained of constitute the breach of a special contract
between the parties may always be looked to, in connection
with other elements that enter into the question, it is by no
means conclusive in determining whether case will lie.    An
examination of the standard authors who have treated of
this subject, as well as of the decisions bearing on the ques-
tion, conclusively shows that there are many elements that
often enter into the question besides the one just mentioned,
such as, the business, profession or calling of the wrong-doer;
the character of the relations between the parties,—whether
one of trust and confidence, or otherwise ; whether the defend-
ant rests under any implied duties or obligations to the plain-
tiff, arising either *ex contractu* or *ex lege*, and the like.    One or
more of these considerations often become important factors
in determining whether the action will lie.

It is a familiar doctrine that case will lie for a mere non-
feasance against persons exercising certain public trades or
employments, where no contractual relation exists between
them and the plaintiff, as, where a common carrier, having
the requisite means of transportation, refuses to carry goods
or passengers.    Chitty, in discussing this matter, in his work
on Pleadings, says :    "There are, however, some particular
instances of persons exercising certain public trades or em-
ployments, who are bound by law to do what is required
of them in the course of their employments without aid of
express contract, and are in return entitled to a recompense,
and may, therefore, be sued in case, as for a breach of duty
in refusing to exercise their callings,—as, where a common
carrier, having convenience, refuses to carry goods, being ten-
dered satisfaction for the carriage ; or an inn-keeper to receive
a guest, having room for him; or a smith, having materials

for the purpose, to shoe a horse for a traveler; or a ferryman to convey one over a common ferry, and the like." (Vol. 1, 136.) It is clear, from the language of this author, the classes of persons enumerated are intended as mere examples of the application of the general principle stated, and not as a limitation of the rule itself, and by a well recognized rule of the common law the same principle should be extended to all other trades and callings that bear the same relation to the public as those just enumerated, and the fact that no precedent can be found for it is entitled to but little consideration, when it is clear the case in hand falls within the principle. This is particularly true with respect to extending as a remedy the action we are considering, to new states of facts, where they clearly fall within the general principle upon which the action is maintained. To the objection there was no precedent for the action made on a certain occasion before PRATT, Ch. J., (afterwards Lord CAMDEN,) he is reported to have said: "I wish never to hear this objection again. The action is for a tort. Torts are infinitely various, not limited or confined, for there is nothing in nature but may be an instrument of mischief." Indeed, the writ in case, as its very name imports, was invented for the express purpose of giving a remedy where none of the old forms of writs were applicable, and the British Parliament, by Stat. Westm. 2 C. 24, with the view of promoting the remedy by this writ, expressly directed that "where in one case a writ is granted, in like case, when like remedy falleth, the writ shall be made as hath been used before;" and when "in one case a writ is found, and in like case, falling under like law, and requiring like remedy, *is found none*, the clerks of the chancery shall agree in making the writ." 2 Inst. 404.

Since, as we have just seen, certain legal consequences affecting the question we are considering result from the exercise of certain public trades or employments, it becomes important to determine, with some degree of particularity, the

true relation which the Pullman Palace Car Company sustains to the public, and to point out, so far as we are able, the difference between it and persons or companies exercising public callings or employments like those above enumerated, if, indeed, any such difference exists. Like an ordinary railway company engaged in the transportation of freight and passengers, this company transacts its entire business, so far as it relates to this case, over the various railways in this and other States. Like railway companies it exercises special privileges and franchises granted to it by the State, and its business is transacted almost exclusively with the traveling public. Its cars on the various lines of road are extensively advertised all over the country, setting forth, in fitting terms, the accommodations and comforts they afford, rates of charges, etc., and the public are earnestly invited to avail themselves of the advantages and comforts they thus offer. In what respect, then, does this company differ in its relation to the public, so far as the present inquiry is concerned, from an ordinary railway company? No difference has been pointed out by counsel, and we are confident none can be. Why, then, should not the same principles be held to apply to it that apply to common carriers, and others in like employments, in so far as their relation to the public is the same? To say there is no precedent for it, we have just seen, is not a sufficient answer. Indeed, it has ever been the boast of the common law, that, by reason of its elasticity, it adjusts and moulds itself to meet the constant changes in the affairs of life, and that it never hesitates to apply old rules to new cases, when it is clear they come within the reasons or principles of such rules. The business of this company in running its elegant and commodious sleepers over various lines of railways has become one of the great industries and enterprises of the country, contributing, perhaps, as much, or more, than any one thing to the convenience and comfort of the traveling public. Indeed, the

running of these sleepers has become a business and social necessity. Such being the case, can it be maintained the law imposes no obligations or restrictions on this company in the discharge of its duties to the public? Or, more accurately put, is it true this company owes no duties to the public except such as are due from one mere private person to another? Can it be possible that the common carrier, the ferryman, the inn-keeper, and even the blacksmith on the roadside, are all, by reason of the public character of their business, by mere force of law, placed under special obligations and duties to the public which they are bound to observe in the exercise of their respective callings, while, at the same time, this company is entirely relieved from the observance of all such duties and obligations which are not expressly contracted for? We think not. To so hold would be to unjustly discriminate between parties similarly situated, and make the law inconsistent with itself, to the great detriment of the public.

If, then, this company owes any duties to the community by reason of its relation to the public, as we hold it does, manifestly one of them is, that it shall treat all persons whose patronage it has solicited with fairness, and without unjust discrimination. When, therefore, a passenger, who, under the rules of the company, is entitled to a berth upon payment of the usual fare, and to whom no personal objection attaches, enters the company's sleeping car at a proper time for the purpose of procuring accommodations, and in an orderly and respectful manner applies for a berth, offering or tendering the customary price therefor, the company is bound to furnish it, provided it has a vacant one at its disposal. To require this of the company is merely exacting of it that which is clearly dictated by the plainest principles of justice and fair dealing. To construe the law otherwise might lead to great abuses and the grossest injustice, detrimental alike to public and private interests. Suppose, for

instance, a party who, by reason of advanced age or feeble health, is unable to travel after night except in a sleeper, having an important business engagement at a distant point on a specified day, with a choice of several routes, after having examined the advertisements relating to them makes his selection of the one that has through sleepers, and accordingly arranges his time of departure so as to reach his destination by traveling day and night. At the appointed time for leaving he provides himself with a first-class ticket over the road and enters the sleeper, where he finds plenty of vacant berths, and asks the conductor to assign him one, tendering the customary price therefor, but the conductor, from some private pique, or from mere wantonness, refuses to let him have one, and by reason of such refusal he is unable to meet his business engagement, whereby he is subjected to great pecuniary loss. Can it be said there is no remedy in such case? Certainly it can, if the law does not, under the circumstances supposed, impose upon the company the duty of furnishing berths when it has them for disposal. But, as we have already seen, such is not the law. Holding then, as we do, where there are sleeping berths not engaged, it is the duty of the company, upon the payment or tender of the customary price, to furnish them to applicants when properly called for by unobjectionable persons, it follows the defendant was not justifiable in refusing to let the plaintiff have one for himself and wife, and it is well settled the fact there was a special contract between the company and the plaintiff, upon which an action of assumpsit might have been maintained, does not at all affect the right to recover in the present form of action, which is founded upon the defendant's common law liability, as above stated.

But outside of this view, of the soundness of which we have no doubt, the same result may be reached by a somewhat different process, though the principle, perhaps, is the same in both cases. Let us assume, then, for the purposes of

the argument, the defendant owes to the public no common law duties in the absence of any contract relating to its business. It would then follow the defendant is under no obligation to the plaintiff, except such as grew out of the contract entered into between them. But it does not follow that all the duties growing out of the contract on either side must have been expressly stipulated for. On the contrary, nothing is better settled than that in many contracts, especially those which establish peculiar relations between the parties, as, those of confidence and trust, the law silently annexes certain conditions, and imposes mutual obligations and duties, which are not all, in express terms, provided for in the contract, yet, in contemplation of law, they are nevertheless regarded as a part of the contract, and the non-performance of them may, in an action on the contract, be assigned as a breach thereof. But while assumpsit will certainly lie for a breach of these implied duties, it is equally well settled that case will lie also. Strictly speaking, these duties arise *ex lege* out of the relation created by the contract. As familiar illustrations of this class of contracts, which give rise to an almost infinite variety of implied duties and obligations, may be mentioned those between client and attorney, physician and patient, carrier and shipper, and, in short, every species of bailment. In all these and analogous cases it is conceded case is a concurrent remedy with assumpsit for a breach of the implied duties growing out of any of these relations.

Now, when we look at the contract between the plaintiff and defendant, the character of the business of the company, the subject matter of the contract, the relations of the parties with respect to such subject matter, and all the circumstances attending the transaction, can it be doubted for a moment that the contract falls within the same class of contracts as those between carrier and passenger, and the like? Can it be questioned that upon assigning the two berths to the plaintiff upon the terms which he agreed to and offered to

comply with, and which the company agreed to accept, the contract thus made at once became obligatory and binding upon the parties, and that it established a special relation between them, such as that between carrier and passenger, and the like, to which the law, of its own force, annexed certain implied obligations and duties, to be respectively observed and performed by the parties towards each other? Clearly not. What were some of these implied duties? On the part of the plaintiff, he impliedly agreed to conduct himself in a quiet and orderly manner, to take due and proper care of the berths while in his possession, and surrender the same at the end of his journey in as good condition as when assigned to him, necessary wear excepted. On the part of the company it was impliedly stipulated that it would use all reasonable and proper means within its power to preserve order and decorum in the sleeper during the journey, and especially during sleeping hours, and that it would furnish and keep on hand such supplies and conveniences as are usually found in like sleepers, and are necessary to the health and comfort of passengers, and also that it would permit the plaintiff to quietly and peaceably occupy the berth engaged by him during the journey, and not expel him or his wife from the car or such berth, or otherwise attempt to interfere with its proper use and enjoyment, so long as he and his wife demeaned themselves with propriety. None of these duties were, or ever are, expressly stipulated for by one engaging a sleeping berth, for the simple reason the law always implies them from the relation of the parties created by the contract securing a berth; and for a breach of any of these implied duties, it is clear, as already shown, case is a concurrent remedy with assumpsit, and, indeed, is always the more appropriate remedy where matters of aggravation are relied on as an element of damage. It is clear, in the present case the defendant utterly disregarded its duty in not making up the berth of the plaintiff, and in not permitting him and his

wife to occupy it through the night, and in expelling them from the car, and for this it must be held liable.

The view here expressed is believed to be in consonance with the general principles of the law, and is clearly sustained by some of the best considered cases, both English and American. *Burnett* v. *Lynch,* 5 Barn. & Cress. 589; 11 Eng. Com. Law, 597; *Hancock* v. *Coffin,* 21 Eng. Com. Law, 318; *Dickson* v. *Clifton,* 2 Wils. 319; *Boorman* v. *Brown,* 3 Adol. & E. (N. S.) 525. In this last case, Chief Justice TINDAL, in delivering the judgment in the Exchequer Chamber, entered into an extended review of the authorities, and in summing up used this language: "The principle in all these cases would seem to be, that the contract creates a duty, and the neglect to perform that duty, or the nonfeasance, is a ground of action upon a tort,"—and this case was affirmed on appeal to the House of Lords. (11 Cl. & Fin. 44.) In this case, Lord CAMPBELL, in delivering the judgment in the House of Lords, says: "I think the judgment of the Court of Exchequer Chamber is right, for you can not confine the right of recovery merely to those cases where there is an employment without any special contract. But wherever there is a contract, and something to be done in the course of the employment which is the subject of that contract, if there is a breach of the duty in the course of that employment the plaintiff may recover, either in tort or in contract." This, subject to the limitation hereafter to be stated, we regard as the true rule on the subject.

It is often, and indeed generally, stated, the action lies only for the breach of a common law duty, and this we believe to be strictly true; yet there is some confusion in the cases as to what is meant by a common law duty, growing out of the fact that it sometimes arises without the intervention of a contract and sometimes with it, and in the latter case it is often said, as in the case last cited, "the contract creates the duty," and while this is true and accurate enough

in a certain sense, yet when we attempt to define with precision just when the action will lie and when it will not, the statement is not sufficiently definite, for it must be conceded the law makes it the duty of every one to perform his contract, and it is clear case will not lie for the breach of every duty created by contract. If one contracts to deliver to another a load of wood, or pay a specific sum of money on a given day, and fails to do so, an action on the contract alone will lie,— and yet it is manifest, in the case supposed, there has been a breach of duty created by the contract. We think it more accurate, therefore, to say, that case lies only for the breach of such duties as the law implies from the existing relations of the parties, whether such relations have been established with or without the aid of a contract; but if created by contract, it is no objection to the action that the performance of the duty in question has been expressly stipulated for, if it would have existed by reason of such relations without such stipulation. This is well illustrated by the case put in the early part of this opinion, where B let his horse to A, to be kept at a stipulated price per day, and returned on demand. Now, in that case, by the mere delivery of the horse, to be kept at the price agreed upon, the law implied or imposed the duty of returning him upon demand, without any agreement to that effect, and the duty being thus implied by law, independently of the express stipulation for its performance, case clearly would lie for its breach.

The general principle seems to be this: Where the duty for whose breach the action is brought would not be implied by law by reason of the relations of the parties, whether such relations arose out of a contract or not, and its existence depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract, and not in tort,— when otherwise, case is an appropriate remedy. Of course, assumpsit is a concurrent remedy with case, in all cases where there is an express or implied contract.

The judgment of the Appellate Court is reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause for further proceedings not inconsistent with the views here expressed.

*Judgment reversed.*