(110 App. Div. 250.)

## APLINGTON v. PULLMAN CO.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. CARRIERS—CONDITIONS ON TICKET.

Conditions upon a passenger's ticket only become binding upon him in the event of his knowing or discovering the provisions or his attention being drawn thereto or the circumstances being such that it was negligence for him not to discover the conditions.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1025.]

2. SAME—SALE OF BERTH—FAILURE TO FURNISH—DAMAGES.

Plaintiff having purchased a ticket entitling him to a lower berth on a sleeping car, he was informed on arriving at the car that there was no lower berth, save one that he would have to vacate at an early hour the next morning, and, fearing to take an upper one, as he was a somnambulist, he left the car and entered an ordinary coach, and in an action against the sleeping car company, he offered to prove inconvenience, annoyances, pain, and suffering incident to traveling in ordinary coaches. *Held*, that inasmuch as the jury might find that, in addition to the breach of contract, there was in effect an ejection from the car, the offered evidence should have been admitted.

3. SAME—QUESTION FOR JURY.

It was for the jury to say whether plaintiff's conduct in refusing to accept the lower berth, or an upper berth, was unreasonable, so as to go in mitigation of damages.

O'Brien, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Henry Aplington against the Pullman Company. From a judgment in favor of defendant, and from an order denying motion for a new trial, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and LAUGHLIN, JJ.

H. Aplington, in pro. per.

Allan McCulloh, for respondent.

LAUGHLIN, J. This is an action to recover damages for the wrongful ejectment of the plaintiff from one of the defendant's sleeping cars in which he had purchased a berth. On the 14th day of March, 1901, the plaintiff at San Antonio, Tex., purchased of the agent of the Galveston, Harrisburg & San Antonio Railroad Company a through ticket for a continuous passage to New York, and at the same time purchased a ticket from the defendant company for a double lower berth in a sleeping car from San Antonio, Tex., to Jersey City. The Pullman Company's ticket was in two parts; one for the lower berth to New Orleans, and

the other for the remainder of the journey. The agent who sold the Pullman ticket to the plaintiff designated in writing thereon that he was to have a lower berth from New Orleans, but did not designate the number of the berth. There was printed on the ticket in fine type over the printed signature of the general ticket agent under the heading "Important" the following:

"Agent selling this ticket will punch accommodation sold and paid for whether one or two berths, but will not write in the section number, nor say whether lower or upper in this, the second coupon. Agent must not sell drawing, state or private room until he has first obtained permission of office holding same."

The attention of the plaintiff was not drawn to this matter, and he did not read it. Evidently, the agent of the company considered it the custom, or deemed it proper that he should designate upon the ticket that the plaintiff was to have a lower berth. However, even if the ticket constituted the contract in part, it could only become binding on the plaintiff in the event of his knowing or discovering its provisions or his attention being drawn thereto, and whether he was negligent in not discovering the same would, at most, be a question for the jury. Grossman v. Dodd, 63 Hun, 324, 17 N. Y. Supp. 855, affirmed 137 N. Y. 599, 33 N. E. 642; Eddy v. Syracuse Rapid Transit Ry. Co., 50 App. Div. 109, 63 N. Y. Supp. 645. Moreover, the parol agreement under which the ticket was purchased either alone or in connection with the ticket constituted the contract. Cases supra; Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; Mann Boudoir Car Co. v. Dupre, 54 Fed. R. 646, 4 C. C. A. 540, 21 L. R. A. 289; Zimmer v. N. Y., etc., Ry. Co., 137 N. Y. 460, 33 N. E. 642.

The plaintiff testifies that he stated to defendant's agent that he desired a lower berth through to Jersey City, and asked if he could have it, and was informed that he could, and received and accepted the ticket on the understanding that it was for a lower berth through. He had therefore obtained the right from the railroad company to through transportation and from the Pullman Company to the use of a double lower berth in one of its cars throughout the journey authorized by the railroad ticket. He started on the journey on the evening of the 14th of March. That part of the ticket calling for a lower berth from San Antonio to New Orleans was taken up by the conductor, and plaintiff was assigned to and occupied a lower berth until he reached New Orleans the following evening. At the outskirts of the city, evidently at a junction, the plaintiff, with other passengers, was directed to vacate the sleeping car, and take another train there for New York. The plaintiff did as he was directed, and entered the sleeping car of the defendant attached to the New York train, and bound for Jersey City at about 7:45 p. m. He presented to the Pullman car conductor the unused portion of the Pullman ticket, and asked for a lower berth for which it called. The conductor informed him that upper 8 had been assigned to him; that there was only one unoccupied lower berth, which was reserved from Montgomery, Ala., where the train would arrive about 6:10 the following morning, and that, in the meantime, he might occupy the berth, but would be obliged to vacate the same at that hour. The plaintiff demanded a lower berth through to Jersey City in accord-

ance with his ticket. In the meantime the conductor sold the lower berth to Montgomery. All of the lower berths having been sold, and the conductor having refused to give him a lower berth, the plaintiff left the car, and entered an ordinary day coach on the same train on which he rode all night. He offered to prove that he was obliged to change cars at Montgomery at 6:10 the following morning, at Atlanta at noon, and at Washington at 7 o'clock the following morning, and that he was obliged to ride in a day coach all the way for two nights and a day and a half; that he was afraid to take an upper berth owing to the fact that from infancy. he had been accustomed to walk in his sleep, and believed that it would endanger his life to occupy an upper berth; that there were no conveniences for washing or sleeping in the cars in which he was obliged to ride, and that he sustained inconveniences and annoyances, and pain and suffering incident to traveling in that manner, and owing to the associates that he encountered in the day coaches. Counsel for the defendant objected to this evidence, and it was excluded, and plaintiff duly excepted.

The trial court rules that defendant violated its contract with the plaintiff, but that his damages were limited to the cost of the sleeping car ticket from New Orleans to Jersey City, which was $8, and directed a verdict for that amount. The plaintiff asked to go to the jury on all the questions in the case, and particularly on the question of his ejectment from the car and as to damages, and excepted to the refusal of the court to grant his request and to the verdict as directed. We are of opinion that the learned court was right in ruling that the defendant was guilty of a breach of its contract; but we think that the evidence offered on the question of damages should have been received and submitted to the jury. Where one purchases a ticket for a continuous long journey and perhaps pays an additional fare to travel by special train, and has business or social engagements, or is in a condition of health that requires him to make the journey at that particular time, and by that particular train, and engages a berth, section, or stateroom in a sleeping car for his health, comfort, or convenience, he should not, when the sleeping car company refuses him the conveniences and facilities which he purchased, be confined to a recovery of the cost of the sleeping car ticket. That would not be adequate compensation. Public policy also requires that a liberal rule of damages should be accorded the plaintiff in such a case. If the damages are in such case to be limited to the cost of the ticket, not only will the traveling public be seriously inconvenienced and annoyed, but it would lead to the resale of tickets for gratuities tendered by subsequent applicants, and result in the utmost confusion. The sleeping car company has notice of every element of damages that a traveler is liable to encounter in such circumstances. For the indignity inflicted upon the passenger in the presence of other passengers by being refused the berth which he had purchased, and by being obliged to leave the sleeping car, and for the inconvenience and annoyance which he suffers by being obliged to travel in a day coach without sleeping or washing facilities, and being obliged to change cars at early and late hours he should be compensated. Although the decisions on this point are not fully in accord, the trend of judicial authority is that these are elements of

damage for which a recovery may be had. Buck v. Webb, 58 Hun, 185, 11 N. Y. Supp. 617; Braun v. Webb, etc., 32 Misc. Rep. 243, 65 N. Y. Supp. 668; Nevin v. Pullman Pal. Car Co., 106 Ill. 222, 46 Am. Rep. 688; Hughes v. Pullman Pal. Car Co. (C. C.) 74 Fed. 499; Pullman Pal. Car Co. v. King, 99 Fed. 380, 39 C. C. A. 573; cited approvingly Gillespie v. Railroad Co., 178 N. Y. 361, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503; Mann Boudoir Car Co. v. Dupre, supra; Pullman Pal. Car Co. v. Booth ('Tex. Civ. App.) 28 S. W. 719. See, also, Gillespie v. Brooklyn Heights Ry. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503.

The action, strictly speaking, is not ex contractu. It would not be assignable and the statute of limitations relating to torts as distinguished from contracts would be applicable. Webber v. Herkimer, etc., R. R. Co., 109 N. Y. 311, 16 N. E. 358. The action is, however, ex contractu in the sense that the wrongful act in refusing the plaintiff the berth and excluding him from the sleeping car, which is the gravamen of the case, is dependent upon the contract. A recovery may be had both for the breach of contract—the value of the ticket—and for the tort. It is not essential, however, to analyze the nature of the action. The facts are pleaded. The plaintiff has not alleged merely a breach of contract, but he has alleged his wrongful ejectment. This distinguishes the case from Miller v. Baltimore & Ohio R. R. Co., 89 App. Div. 457, 85 N. Y. Supp. 883, which was an action on contract where there was no ejectment. The learned counsel for the respondent contends that there was no ejectment here, and that the plaintiff voluntarily left the car. We are of opinion that this cannot be said as matter of law. The jury could well have found that there was nothing left for the plaintiff to do but to leave the car, and that it constituted none the less an ejectment that he did so on being repeatedly informed that he could not have the berth which he had purchased or any lower berth without waiting to be further humiliated by being commanded to leave or for the application of force. Townsend v. N. Y. C. & H. R. R. Co., 56 N. Y. 301, 15 Am. Rep. 419; Buck v. Webb, supra. The plaintiff was on the train, and, for aught that appears, it had started at the time of his interview with the conductor. The plaintiff was technically right at least in insisting on a lower berth, for the contract was for a lower berth, and he was entitled to what he engaged, even though another might answer. Pullman Palace Car Co. v. Taylor, 65 Ind. 153, 32 Am. Rep. 57. If the jury believed that he was accustomed to walk in his sleep they would readily find that he was justified in refusing to take an upper berth. Whether his conduct was reasonable in refusing to accept the lower berth for the first night, which he would have been obliged to vacate early in the morning, or in refusing to accept an upper berth, was a question of fact for the jury; and any unreasonable conduct on his part would go in mitigation of damages. Pullman Palace Car Co. v. King, 99 Fed. 380, 39 C. C. A. 573. The evidence excluded, however, should have been received, and, for this error, a new trial must be awarded.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except O'BRIEN, P. J., and INGRAHAM, J., who dissent.