JEROME BUCK, Respondent, *v.* W. SEWARD WEBB, as
President of the WAGNER PALACE CAR COMPANY,
Appellant.

*Loss of a drawing-room car ticket — right of the passenger, notwithstanding the loss, to
occupy the seat — costs payable as a condition of granting a new trial, where a
verdict is set aside as against evidence.*

A passenger, who had purchased a ticket entitling him to a seat in a drawing-room
car from Saratoga Springs to the city of New York, having lost the ticket
applied to the agent who had issued it for another. The agent declined to
issue another ticket, but gave the passenger his personal card with the state-
ment thereon: "This gentleman holds seat in 'Nokomis,' this p. m. Mislaid.
C. E. Benedict." With this card and his passage ticket the passenger took his
seat in the drawing-room car, and when called upon by the conductor for
his drawing-room car ticket explained the facts and produced the card of the
agent. No other person appeared to claim the seat in question, but the con-
ductor of the car declined to accept the card of the agent, with the explanation
offered, and informed the passenger that he must then pay for the seat or leave
the car. The passenger declined to pay and went into a common car.

In an action brought by the passenger to recover the damages arising from his
removal from the drawing-room car:

*Held,* that as no other person made claim to the seat in the drawing-room car, and
the particular ticket issued therefor could not be used at any other time on this
or any other car, the conductor should have acted on the report of the agent
and have allowed the passenger to remain in his seat, and that the railroad com-
pany was liable for the damages resulting to the passenger by reason of his
removal therefrom. (Van Brunt, P. J., dissenting.)

Hun—Vol. LVIII    24

A party entitled to relief against a verdict not supported by the evidence, is properly required, as a condition of his obtaining a new trial, to pay the costs of opposing the motion and the costs of the trial, including witness fees and disbursements, but not to pay all the costs of the action, as a condition of the granting of a new trial.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the county of New York on the 18th day of December, 1889, and from an order, entered in said clerk's office on the 22d day of November, 1889, granting a new trial upon the ground that the damages were excessive, upon the payment of all the costs and disbursements of the action, and also from an order of the Circuit Court, dated December 18, 1889, entered in the office of the clerk of the county of New York on the 7th day of January, 1890, denying a new trial, on the ground that the defendant had refused to pay such costs and disbursements.

*Saunders, Webb & Worcester*, for the appellant.

*G. W. Cotterill*, for the respondent.

DANIELS, J.:

The verdict was for the sum of $1,000, for the damages which the jury concluded the plaintiff had sustained by his exclusion from seat 23, in the drawing-room car Nokomis, for which he had paid one dollar and fifty cents, for his passage from Saratoga Springs to the city of New York. The ticket had been obtained by him from an agent representing the company in the village of Saratoga Springs. And it in form entitled him to that seat, but only on this train and for the day on which it was issued. His evidence, which the jury must have credited to render the verdict they did in his favor, was that, after the purchase, the ticket had been lost. And he then repaired to the office of the agent for another, but as the diagram of the car, showing the seats for which tickets had been issued, had, in the meantime, passed out of his possession the agent declined, as he very well might, to issue another. He did, however, supply the plaintiff with his personal card, with the statement added that, "This gentleman holds seat in 'Nokomis,' this P. M., mislaid. C. E. Benedict." And with that and his passage ticket he took the seat. After the train had started the conductor of the car

called upon the plaintiff for his drawing-room car ticket, and the explanation of these facts was made to him, with the production of the card of the agent containing the indorsement which has been mentioned. But the conductor of the car declined to accept this card with the explanation, for the occupancy of the seat, although it had been marked on the diagram as having been sold, and no other person had appeared to claim it by virtue of the lost ticket. The plaintiff was informed that he must then pay for the seat or leave the car. He declined to pay, and complying with the order of the conductor of the car he passed into a common car, which he testified was to some extent uncleanly, and continued there until the arrival of the car at the city of New York in the evening. It further appeared that the money paid by the plaintiff to the agent for the ticket was returned to and, it is to be presumed from the evidence, retained afterwards by the company, which, in this manner, had the advantage of the price of the seat without rendering the service. If the conductor had permitted the plaintiff to occupy the seat, it would have been his duty to issue a check for it, which the porter would have taken up and delivered to an officer of the company, when it would have been charged to the conductor. And it was the apprehension of the loss of the fare in this manner which seems to have induced him to withhold his consent to the occupancy of the seat by the plaintiff. But it is by no means sure that this loss would have been made to fall upon him if he had allowed the plaintiff the seat. The officers to be dealt with are usually reasonable, practical and fair men, and by the presentation of the agent's card, and information of the fact that this seat appeared on the diagram to have been sold, and remained unclaimed by any other passenger, they would, without doubt, have ratified the act of the conductor if he had allowed the plaintiff his seat. But, if they would not, that fact would not displace the plaintiff's right to it, and the loss, if it had occurred, must have been an incident of the conductor's employment.

By the facts that the seat appeared in the diagram to have been sold, and it was claimed by no other person, and the conductor was made aware of the fact by the presentation of the agent's card that the plaintiff was the purchaser, he had perfectly satisfactory evidence before him that the latter was entitled to this seat. It could not

have been more so if the ticket itself which the agent sold had been produced. If another person had appeared with it and claimed the seat, or if it could have been used on any other train or car, or on this car at any other time, the case would have been different, and have sustained the act of the conductor. But as no other person did claim the seat, and this particular ticket could be used at no other time on this or any other car, the conductor should have acted on the report of the agent and given this seat to the plaintiff. What the law exacts from carriers of passengers is reasonable conduct on the facts brought to their knowledge, or that of their agents and employees. And it was not reasonable to deny his seat to the plaintiff when his title to it was supported by all these facts.

A large array of authorities have been brought to the attention of the court by the defendant's counsel, as cases tending to shield the defendant from liability. But neither arose upon any state of facts bearing any substantial analogy to those now presented. They were either passage or fare tickets, not restricted to any car or train, or were detached in such a manner as to deprive the passenger of his right to the passage, or the time to which their use had been limited had previously expired, neither of these facts existed here, for the ticket had been sold for this seat on this trip by this car, and the conductor was assured of that fact by the report of the agent, and that the plaintiff was the purchaser. It was an improper use of his authority after that to send him into another car.

Certain rules of the company were introduced to sustain the action of the conductor. But they did not do that, for neither expressly nor by implication did they include it. Whatever wrong was suffered by the plaintiff was done by the employee of this company. There was no default whatever on the part of the company moving the train and carrying the plaintiff. But it was wholly confined to the defendant, which should be held liable to make adequate indemnity to him for the failure to perform its obligation with him. He was not bound to pay the price of the seat again, for he had already acquired the right to it, and was entitled to stand, as he did, on that right.

But while he was subjected to an indignity which could not fail to be attended with a disturbance of sensibility as well as mortification, he was not personally injured, nor were his rights further

invaded than by his exclusion from this seat, and the moral compulsion to which he then submitted of passing to and making his passage in another car. The company was liable to compensate him by way of damages for this injury. The case clearly is one for indemnity only, and not for punishment. In that respect the jury misjudged its duty by rendering their verdict for $1,000. It exceeded all legal bounds of the injury, and that was considered to be the case by the justice presiding at the trial. But he was in error in directing the payment of all the costs of the action as one of the conditions on which a new trial was ordered. For the rule established by the authorities is, that the party entitled to relief against a verdict not supported by the evidence, shall pay the costs of opposing the motion and the costs of the trial, including witness fees and disbursements. Cases do arise where the court itself can, with reasonable fairness and intelligence, by its own action, determine the amount which should not be exceeded by the verdict. But this is not one of them. It is peculiarly adapted to the jury, whose discretion, however, should be restrained and guarded against unwarranted extravagance. That was not done.

And the order made should be so far modified as to direct a new trial on payment of the costs and disbursements of the trial, including the fees of witnesses, to be ascertained by adjustment after notice, before the clerk, and ten dollars costs of opposing the motion, and the defendant, in that event, should be allowed ten dollars costs and its disbursements on this appeal. If the defendant fails to pay such costs within the time designated by the general rules of practice, then the order should be affirmed, with the costs and disbursements, already mentioned, to the plaintiff on this appeal. But if the costs shall be paid, including the fee for opposing the motion, then the judgment should also be vacated with the verdict.

Brady, J., concurred.

Van Brunt, P. J.:

I dissent from the result arrived at, because I do not think that any cause of action was made out.

Order modified as directed in opinion, and, as modified, affirmed.