Almost equally strong is the language of the court, speaking. through Judge Ruger, in the case of Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537.   This was a case of an accident in a mine, in which the allegations of the plaintiff were in many respects similar to those of the case at bar.   The court say that the evidence is not sufficient to support the allegations of the complaint, and comment as follows:

"There was no evidence but that apparatus and appliances, similar to the one in question, were generally in use in deep shafts for mining purposes in this country, and in some instances it appeared they were required to be used by the statutes of the states in which they were employed.   No proof was given of any defect in the plan or structure of the machinery or appliances constituting the apparatus used in elevating and lowering the bucket in question, or that it was not well constructed, of good materials, in accordance with the plans generally followed in manufacturing similar apparatus."

In the case at bar the winch was such as is in ordinary use.   There was no evidence that it was out of repair; but, on the contrary, the testimony of the plaintiff, as well as that of all the witnesses who in any manner touched upon this question, shows that the machine responded to the action of the engineer with reasonable promptness, and that the accident was due, not to any neglect on the part of the defendant, but to the carelessness of a fellow servant, or to his own negligence in not taking those precautions in handling a new rope which were necessary to prevent accidents.

For these reasons, the judgment of the trial court is reversed, and a new trial granted.   All concur.

---

(26 App. Div. 413.)

### PENFIELD v. CLEVELAND, C., C. & ST. L. RY. CO.

(Supreme Court, Appellate Division, Second Department.   March 8, 1898.)

1. CARRIERS—EXPULSION OF PASSENGER FROM STATION.

In an action by a passenger to recover damages from a railroad company for his ejection from a station, it appeared that by an accident for which neither party was responsible he had, at an intermediate station, been carried, on a dining car, several hundred feet away from his own car, to a point outside the station, and that he thereupon walked back and entered the station.   After he had proceeded some hundred feet within it, he was expelled therefrom by a station policeman, acting under the assumed authority of a rule forbidding passengers to enter the station where he had done, and which had been adopted to prevent danger to passengers in crossing the tracks.   In consequence of this act he lost his train.   Held, that the interference of the officer came too late, and constituted, not a proper enforcement of the rule, but an unlawful attempt to impose a penalty for its breach.

2. SAME—UNION DEPOT—TORTS OF STATION EMPLOYE.

The station was a union station for the accommodation of several railroad companies, and was managed through the medium of a distinct corporation, the control and ownership of which were in several railroad companies, including defendant.   Held, that a provision for stations was a part of the business and duty of the railroad company, from the nonperformance of which it could not be relieved by delegating the duty, and that, as between the defendant and its passengers, the station officer was the defendant's servant, for whose acts, within the scope of his duty and employment, the defendant was liable.

Appeal from judgment on report of referee.

Action by William W. Penfield against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. Judgment for defendant on decision of referee, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Henry W. Smith, for appellant.

Henry L. Sprague, for respondent.

CULLEN, J. The plaintiff was a passenger on one of the defendant's trains, his intended journey being from Greencastle, Ind., where he first boarded the cars, to New York City. When the train arrived at Indianapolis the plaintiff, with the consent of the conductor, left the train, and went into the reception room of the station to obtain some baggage which he had previously left there, and to secure his sleeping-car ticket. On his return he found the train had been moved, and was directed by the conductor to a standing car as being the car which he should take. Finding the vestibule door of this car locked, he went on the platform of the next car to it, a dining car, from which to seek entrance into his own car. While on the platform of the dining car, that car was moved several hundred feet away, to a point outside of the station. The plaintiff thereupon went back along the tracks, and entered the station, and when within the station was expelled from it by a station policeman, who informed him that the rules forbade any one entering the station from that direction. The plaintiff then entered the station through the ordinary entrance, but found when he reached there that his train had left. This action is brought for his expulsion by the officer.

We shall assume, as held by the learned referee, that there was no negligence on the part of the defendant in directing the plaintiff to his car, or in moving the dining car away. At the same time we see no negligence on the plaintiff's part in seeking to enter the car by the means which he adopted. In that view, the fact that the plaintiff was carried out of the station was simply an accident, for which neither party was responsible. We also agree that the rule prohibiting passengers from entering the station along the tracks was reasonable, and that the defendant was justified in enforcing it. But, in our opinion, the interference of the defendant's employé came too late. The plaintiff testified that he had proceeded within the station a distance of about a hundred feet, and was within a hundred feet of his train, when he was ejected by the station officer. I find no evidence in the case contradicting this statement. The policeman says that he saw the defendant going into the west end of the union station, and that he was standing right at the end. He further says that he ejected the plaintiff, but where the plaintiff then was he does not state. From this evidence, it is clear that the plaintiff was within the station when the officer sought to remove him. The station superintendent testified that the rule prohibiting entrance into the station through the west end was established to prevent the danger which would occur to passengers in crossing the

tracks which it was necessary to traverse in order to reach that end of the station.    There seems to have been no danger after the party had entered the station, nor any rule against a person who had entered the station through the ordinary means of ingress from being at the precise point where the plaintiff was when he was ejected. Therefore the plaintiff was in no way in the wrong in being where he was at the time of his ejection, but simply in the manner in which he had reached that position.    We think that under these circumstances the case falls within the principle of Huerstel v. Railroad Co., 1 City Ct. R. 134, and Smith v. Railway Co. (Com. Pl.) 18 N. Y. Supp. 759, affirmed in court of appeals on the opinion of Pryor, J., below, 138 N. Y. 627, 33 N. E. 1083.    In the latter case it is said by Judge Pryor:

"Undoubtedly the defendant has authority to enforce observance of its regulations, but by preventing, not by punishing, the breach of them.    The defendant has no power of retribution, and is incapable of compelling conformity to its rules by the imposition of a penalty.    But the ejecting of plaintiff for an act already accomplished would have involved a forfeiture of his right to be carried on that train.    Only by present, or prospective, and not by past, misconduct, does a passenger lose his privileges."

Here the action of the station officer was clearly punitive, and not protective.    The very reason of the rule was to guard against the danger which passengers must undergo in crossing the tracks to approach the station from this direction.    The result of turning the plaintiff out of the station was to compel him to recross the very tracks the danger of crossing which the rule was established to prevent.

The station at Indianapolis was a union station, for the accommodation of several railroad companies.    It was managed through the medium of a distinct corporation, the control and ownership of which were in the several railroad companies.    The provision for stations is as much a part of the business and duty of the railroad company as furnishing the trains or roadbed.    It is a duty which proceeds both from its calling as a common carrier and from the contract which it enters into with its passengers.    Such duty is analogous to a duty imposed by statute, from liability for the nonperformance of which the company cannot be relieved by delegating the duty to an independent contractor.    However it may be as to third persons, as between the defendant and its passengers, the station officer at Indianapolis was the defendant's servant, for whose acts, within the scope of his duty and employment, the defendant was liable.    Pennsylvania Co. v. Roy, 102 U. S. 451; Thorpe v. Railroad Co., 76 N. Y. 407.

The judgment appealed from should be reversed, and new trial granted before a new referee, to be appointed at special term, costs to abide the event.    All concur.