### BILLINGER v. CLYDE S. S. CO.

#### FISHBURN v. SAME.

#### (Circuit Court, S. D. New York. January 2, 1908.)

CARRIERS—REFUSAL TO PERFORM CONTRACT OF CARRIAGE—RIGHTS OF PASSENGERS.

Plaintiffs bought tickets which entitled them to transportation as second-class passengers on defendant's steamships from Jacksonville, Fla., to New York, with the privilege of a stop-over at Charleston, S. C., the remainder of the voyage to be made on any of defendant's vessels which stopped at Charleston. Plaintiffs, after stopping over, boarded a vessel of defendant at Charleston, which was about to sail for New York. As found by the jury they showed their tickets to the purser and the captain who told them that because they were colored men they would only be taken in the steerage, and that unless they were willing to go as steerage passengers they could get off. The vessel in fact carried second-class passengers, and had accommodations for the same. *Held*, that plaintiffs were not bound to accept either alternative so offered, but were within their rights in staying on the vessel and insisting on the accommodations to which their contracts entitled them; that such accommodations being persistently refused they were not obliged to surrender their tickets when demanded, and their refusal to do so did not prejudice their right to recover damages for breach of contract, or for mistreatment by the officers of the company while on the vessel.

Motion by defendant to set aside the verdicts in this case in favor of the plaintiffs, and for new trials on exceptions to the charge of the court.

Robinson, Biddle & Benedict, for the motion.
Franklin Pierce, opposed.

RAY, District Judge. The evidence in these cases, tried together with a separate verdict in each, was substantially undisputed that the defendant is a corporation engaged in running steamers carrying passengers between the state of Florida and the state of New York. It is a common carrier of passengers. That in the month of March, 1903, it sold to each of the plaintiffs a ticket for a second-class passage from Jacksonville, Fla., to the city of New York, with the right and privilege to stop off at the port of Charleston, S. C., and go on to New York by some other steamer on that line at a later date. Each plaintiff availed himself of the stop-over privilege, and took

from the proper officer of the Comanche on which steamer they first took passage another voucher or ticket directed to the proper officers of the company directing and requesting them to give to the plaintiffs, respectively, passage from Charleston to the city of New York. In legal effect these tickets gave to these plaintiffs the right to be carried from Charleston to New York on any vessel of the defendant which carried second-class passengers within the time limited—which was April 30, 1903. This was not questioned on the trial. The court, referring to these substituted tickets, charged the jury "It," referring to the ticket, "did not specify what steamer or vessel he was to come upon, and under these tickets he had a right—the plaintiff had the right—to come on to New York on any vessel of the defendant which carried second-class passengers, whether it had second-class accommodations in point of fact or not, if it actually carried second-class passengers, and was not limited to certain specified individuals, then, of course, he would have the right to come on any one of defendant's vessels which was actually engaged in carrying second-class passengers." This was not excepted to.

Within the time limited the plaintiffs went to a vessel of the defendant at Charleston—the Arapahoe—which was running on this line from Florida to New York, and was about to leave Charleston for New York on a regular trip, and entered the vessel. The claim of each of the plaintiffs is that as they entered the vessel they were met by the purser who stated to them, in substance, when they produced and showed their tickets, which they did, that they would have to go in the steerage; that they did not carry any colored people only in the steerage on that vessel. One of the plaintiffs testified, "I said, 'Is that so?' I objected, and he went for the captain of the vessel, and he came up and said, 'You have got to go in the steerage. I do not carry any colored people only in the steerage.' He said, 'Are you going to get off?' He said, 'Go in the steerage; that is all I can give you; if you do not want that get off.' These are the words to me of the purser and the captain. I remained on the steamer—me and my friend—until they sailed away. I did not get off." By "his friend" this plaintiff referred to the other plaintiff. There was sufficient evidence in the case to justify the finding of the jury that this vessel, the Arapahoe, was then fitted for and was actually engaged in carrying second-class passengers on that voyage, and had second-class accommodations for such passengers and for the plaintiffs. In fact, one of the officers of the defendant then on the vessel testified that he was directed subsequently to offer the plaintiffs such accommodations outside the steerage on surrender of their tickets, and that they refused them. The plaintiffs claimed and gave evidence tending to show that having showed their tickets to the purser and captain, and having declined to go in the steerage, that they were refused second-class accommodations or any accommodations outside the steerage, and were denied food, and were driven out upon the deck and insulted and abused by the captain, and that one of them was forced outside and assaulted by the captain. All this was denied by the defendant, and the defendant's claim was that the purser noticing the men there, and having been informed

that they had such tickets, told them that they could not have second-class accommodations on that vessel, and advised them or told them to get off, and that plaintiffs declined. The defendant says the plaintiffs did not exhibit or produce their tickets at any time. This witness on behalf of the defendant first stated, in substance, that the vessel started within a few seconds.

It was a rule and regulation of the company, and of course a reasonable one, that passengers, when called upon to produce their tickets and surrender them, as they were then given a meal ticket, the possession of which was evidence of their right to be there and receive accommodations, should do so. The court so charged the jury. The contention raised by the defendant on the trial, and now raised here, is that inasmuch as these plaintiffs were told, as their own testimony showed, that they could not have accommodations on that vessel as second-class passengers, for the reason they were colored men, and had time to get off, and were told this when they first entered the vessel, that they had no right to remain on board. The defendant says that, even if the defendant then and there violated its contract and refused to carry the plaintiffs elsewhere than in the steerage of that vessel on the sole ground that they were colored men, the plaintiffs, by remaining on board and insisting on their rights to go on that vessel and receive second-class accommodations, in legal effect accepted the situation and assented to the conditions imposed. The defendant says it was then their duty to get off and sue for breach of the contract; that if they remained on board, as they did, the defendant had the right to treat them as wrongdoers, as stowaways, as interlopers, as having no rights there except as steerage passengers and to steerage accommodations. Also, as it is claimed they did not surrender their tickets when demanded at a later time, it was error for the court to charge in substance that they were not bound to do so if notified in advance that their tickets would not be honored, and that they would be carried in the steerage only, for the sole reason that they were colored men. These are the questions raised by the exceptions to the charge.

The court charged the jury:

"Now, then, gentlemen, I charge you as a matter of law, that if you find those to be the facts, if they showed their tickets, if the captain and the purser knew, or the purser knew, that they had those tickets, if he or they saw them, and if thereafter plaintiffs were told that they must go in the steerage because they were colored, that they only carried colored people there; if that was the reason and the sole reason why defendant's officers refused to give them the passage above the steerage, and they had second-class accommodations—why, then, plaintiffs had the right to hold on to those tickets; they had the right to keep them as an evidence of their rights. In short, if they were notified in advance that their tickets would not be honored, that they would not have accorded to them the rights which their tickets called for, why, then, they were not obliged to surrender into the hands of these officers of the defendant their evidence of that right—not obliged, under such circumstances, to deprive themselves of that evidence; they were under no obligations to acquiesce in such a demand. If, however, gentlemen, that vessel only carried at that time first-class and steerage passengers, if all the accommodations for first-class passengers were filled and occupied, and they had no room above the steerage for any second-class passengers, and could not accommodate them anywhere else, and these plaintiffs knew it or

were informed of it and entered on that voyage under that information, why, then, of course, there would be on the vessel only first-class accommodations and the steerage, and the steerage would be the only second-class accommodations they had, and if the other rooms were all occupied, if that was true, so that they could not give them any second-class accommodations there, why, then, they would be forced, and it would have been their duty, to take the only second-class accommodations they had—if you should find those to be the facts. But the plaintiffs say they were relegated to the steerage, and told that they could not have second-class accommodations, because they were colored people. They say that defendant did carry second-class passengers in that vessel. You have heard the evidence here as to when that vessel commenced carrying second-class passengers. Defendant's witnesses say it was built to carry first-class passengers only; it was built in 1901, and about two years after that they commenced carrying second-class passengers also. This transaction occurred in 1903. A man who had been in the employ of this defendant and who was on the vessel says he knows about it, and you have seen him; you have heard his testimony. He says at that time and on that voyage this vessel was actually carrying, and did carry, second-class passengers, so you, gentlemen, under this evidence are to ascertain and determine what the facts were. Under the evidence of the captain and the other officers, if their statements are correct and true, it was the duty of these plaintiffs on demand to have presented and surrendered up their tickets, because the presumption would be that the officers of the defendant company would give them the proper accommodations, such as their tickets called for. If, however, on the other hand, the plaintiffs are correct in their statement, and their tickets were exhibited, their evidence of a right to a second-class passage was exhibited, and they were told, in substance, that they would not be honored, that because they were colored they would have to go into the steerage, then they were justified in not surrendering them, and it was not their duty to abrogate their contract or forfeit their rights to the accommodations their tickets called for."

This was excepted to. The court was requested to charge:

"Twenty-First. If the jury find that the plaintiffs were notified upon boarding the steamer that they would be carried only in steerage, and having then an opportunity to leave the steamer and did not do so, they can in no event recover more than the cost of obtaining transportation to New York by rail or other means of transportation."

In response the court said:

"That I decline to charge. I reiterate my charge. I decline to charge on that subject other than I have, because if defendant had second-class accommodations there, and was carrying second-class passengers on that vessel; if they were refused what their tickets called for solely because they were colored men, and were told they had to go into the steerage for that reason— then they had the right to stand on their rights and demand them."

The court had been requested to charge, "If the jury believe that plaintiff refused to show his ticket on the purser's demand they must find for the defendant." To that request the court charged:

"That I have already told you, and I tell you again—that is, to show his ticket—if they refused to show their right to a ride and did not do it, why, then, of course, the officers of the ship had the right to treat them, and would be expected to treat them, as persons without a right to be on the vessel at all, and without a right to be given accommodations."

The court was also requested to charge:

"Fourth. Hence, plaintiff having testified that he was asked by both purser and captain to surrender his ticket, and having refused to do so, the jury must find a verdict for the defendant."

To that request the court said and charged:

"That I refuse to charge in this case. If that was all there was to this case, if they had without just reason refused to give up their tickets on request, why, that would be true; but if you should find that they were told they must go into the steerage because they were colored people, that their tickets would not be honored because they were colored people, then, of course, the case is entirely different. So I refuse to charge on that subject different than I have, and I decline for that reason."

The court repeatedly charged that it was the duty of the plaintiffs to show their tickets; that unless they did so they could not recover; but that if they did show their tickets, and if that vessel carried second-class passengers and had accommodations for second-class passengers and for the plaintiffs, and plaintiffs were notified in advance that their tickets would not be honored; and that they must go in the steerage solely because they were colored men—that then they were not, as matter of law, bound to surrender their tickets, and might retain them as evidence of their rights. The court repeatedly charged that the rules and regulations testified to were reasonable, but that if plaintiffs were notified in advance that their tickets would not be honored, having exhibited them, then the jury might say they were not required under such circumstances, and with such a notification, to surrender the tickets. To support this contention the defendant cites the opinion of Cockrell, C. J., in St. Louis Railway Company v. Leigh, 45 Ark. 368, 55 Am. Rep. 558, viz.:

"When the carrier proffers transportation without a seat, and the passenger refuses to surrender his ticket, what is then the attitude of the parties under the contract? It is simply this: The carrier has offered the passenger less than his contract calls for, and the passenger has refused it in satisfaction. This he had the unquestioned right to do. If he is not accommodated in a manner which may be deemed a fair compliance with the duty of the carrier, he may decline any compromise, and resort to his action against the company for refusing to carry him as their contract or their duty requires. But he cannot accept the part that is offered him in lieu of the whole—that is, the transportation without the seat—and at the same time refuse to comply with his own undertaking in this any more than in any other contract. Upon the carrier's neglect or refusal to comply with the terms of the contract of carriage without a just excuse, the passenger is at liberty to treat the contract as violated by the company, and he may leave the train and sue for a breach of the contract."

I do not agree with this contention if it is meant this is the only course and remedy. If a person purchases a ticket entitling him to ride on any second-class passenger train or in any second-class passenger coach from New York to Albany, and he enters such train or coach which has ample accommodations, and is about to leave the station on its regular trip, and is then told by the conductor that he will not be permitted to ride on that train except in the baggage car or the smoking car because he is a colored man, and he sees fit to remain and does remain, asserting his rights, and he is then ordered to the smoking car, and told to surrender his ticket, which he produces, or which he has produced and exhibited, but refuses to surrender it unless he is allowed to take his seat in the second-class coach, there being an abundance of seats, and he is forbidden to seat

himself, such person is justified in refusing to surrender his ticket, and may retain it as his evidence of a right to be there, and to insist upon the accommodations which he demands, and to which his ticket entitles him. If he then, under such circumstances, is by force taken to the smoker or baggage car, and is insulted and abused by the use of vile language, he may recover damages for the assault and indignity even if he did refuse under such circumstances to surrender his ticket. Having been notified in advance, being on the train and in a place where he had the right to be, that his contract would not be honored, he has the right to retain it until a willingness is expressed to comply with the obligations imposed by it. In refusing to surrender his ticket, he does not forfeit his right to be there, or forfeit his right to decent treatment and usage. Nor is it a bar to his recovery for any outrage committed upon him by the company that he has not surrendered his evidence of his right to demand what he did demand, to claim what he did claim, and which the company was able to furnish, he having been notified that his ticket would not be honored, and that his rights would not be respected. The rule that a passenger having entered the train shall surrender his ticket on demand is subject to the qualification that he shall surrender it only when the company shows a willingness to comply with its obligations so far as it can. If told on entering the train and showing his ticket that he must get off because he is colored, and is also told that if he remains he must go in the baggage car and he declines, and he is then told to surrender his ticket and there is no retraction of the assertion that he must go in the baggage car, he is released from his obligation to surrender his ticket. So his refusal to leave the train under such circumstances is justified, and he may retain his ticket and demand his rights so long as the attitude of the railroad company is that it will not recognize it or accord him the rights which he demands, because he is colored.

It is a universal rule of law in all civilized communities that, where the obligations of a contract are mutual, if the one party having a duty to perform notifies the other that he will not perform that other may treat the contract as rescinded, and refuse to proceed under it, and sue for damages, or he may treat it as in force, and insist on performance and demand of the other that he perform on his part, and if the performance by that other be a condition precedent the demanding party is under no obligation to do anything on his part until such other party has performed the condition precedent, or at least evinced a willingness so to do. When a common carrier, having entered into a contract of carriage, announces its purpose and determination to break the contract, it being a public corporation and obligated to carry all comers, when it has accommodations and the ability to perform its duty to the public, refuses so to do, and announces its purpose, the passenger with his contract in hand is under no obligation to surrender it, but may remain in the place where he has the right to be, and demand his rights, and insist upon them if they are violated. The common carrier, knowing he holds the evidence of contract, cannot escape responsibility on the ground that such passenger refused to surrender the evidence of contract of car-

riage, inasmuch as it has not made such surrender a condition of performance on its part, but has announced its determination to disregard and violate the obligations of the contract when surrendered and after surrendered. But it is said that when told they must go in the steerage because they were colored, if they went on that vessel which carried second-class passengers and had accommodations for them, as the claim of the plaintiff was and as the jury found, that, by remaining, the plaintiffs waived their rights to second-class accommodations, and that on their refusal, later, to surrender their tickets and go to the steerage they forfeited their rights to be treated as second-class passengers. This amounts to the claim that the plaintiffs could be compelled to accept steerage passage or remain in Charleston. The plaintiffs never accepted steerage accommodations. They steadfastly refused so to do. They stood upon their rights and asserted them, and refused to surrender their tickets until accorded. This they had a perfect right to do. Moore on Carriers, p. 695.

"A railroad company must furnish to its passengers seats as well as mere transportation, and cannot require the payment of fare or the surrender of a ticket until it has furnished both." Hardenbergh v. St. Paul, etc., R. Co., 39 Minn. 3, 38 N. W. 625, 12 Am. St. Rep. 610.

He may of course leave the train and sue, but if he shows his ticket, and is told it will not be honored because he is colored, and then remains, demanding his rights, he waives nothing. A passenger forfeits no rights by remaining on board the vessel of a common carrier—a corporation—whose duty it is to carry him, demanding his rights, and, if he remains, is not ejected, and his rights are not accorded him he is under no obligation to surrender his ticket. If he refuses, can he be maltreated? The duties of carrier and passenger in such a case are concurrent, and, quoting the language of the Court of Appeals, "It is as much his duty, as the agent of the company, to see that each passenger is furnished with a proper seat, as it is to require him to pay his fare." Willis v. Long Island R. Co., 34 N. Y. 682. "A passenger who refuses to pay fare unless a seat is provided does not thereby become a trespasser on the train." Hardenbergh v. St. Paul, etc., R. Co., 39 Minn. 3, 38 N. W. 625, 12 Am. St. Rep. 610. A common carrier cannot lawfully make a rule that will forfeit the rights of passengers who exhibit their tickets, and demand the accommodations to which they are entitled under it and are refused, on the whim or caprice of the carrier that they shall not ride because they are colored, unless they will accept inferior accommodations, and thus compel them to surrender their rights or leave the conveyance, and sue for damages. Such a rule of law would enable every common carrier in the Union to compel colored men to accept accommodations inferior to those their tickets called for or not ride at all. So, any class of persons, at the will or caprice of a common carrier, even though its members provided themselves with tickets, could be relegated to inferior quarters, or compelled to remain at home and bring lawsuits for damages. The rights of the public are not thus, as yet, made subservient to the whims and caprices of common carriers.

In Lynch v. Met. El. R. Co., 90 N. Y. 77, 83, 43 Am. Rep. 141, the court said, referring to rules:

"But it had no regulation, and could legally have none, that a passenger, before leaving its cars or its premises, should produce a ticket or pay his fare, and if he did not, that he shall then and there be detained and imprisoned until he did so."

In that case plaintiff had lost his ticket.

In the case at bar it was a reasonable rule that passengers should produce and surrender their tickets, when rooms were assigned and meal tickets distributed, as the court charged, but it was not a reasonable rule, and the defendant could not lawfully make one, that passengers with a ticket should, on being told in advance that it would not be honored or respected unless they accepted steerage passage, second-class passage being available, surrender their tickets, and thus consent to accept steerage passage. "The carrier is bound to furnish seats to passengers entitled to transportation, if practicable, and the passenger may refuse to give up his ticket or pay fare if a seat is not furnished." 6 Cyc. 582. Hardenbergh v. St. Paul, etc., R. Co., 39 Minn. 3, 38 N. W. 625, 12 Am. St. Rep. 610. This is given as the law on the subject in 6 Cyc., supra. Under such circumstances, the passenger is not relegated to the remedy of leaving the train and bringing action for damages. True, he may resort to that course, but he has other remedies. He acts within his rights if he remains and insists on his rights, and ejectment from the train or vessel of the carrier under such circumstances would be unlawful. If the passenger may refuse to surrender his ticket because a seat is not furnished, clearly, he may refuse to surrender it when told that the rights of which it is his evidence will not be respected, and that he must accept inferior accommodations because he is colored. The rule stated in 6 Cyc. 582, and Hardenbergh v. St. Paul, etc., supra, is correct. If allowed to remain, as these plaintiffs were, the passenger cannot be treated as a trespasser, or wrongdoer, and with indignity and assaulted. Even if he does break his contract to comply with reasonable rules, the common carrier still owes him a duty, and may not assault or maltreat him, and if it does, or its servants do, is liable for the consequences. Buck v. Webb, President, etc., 58 Hun, 185, 11 N. Y. Supp. 617; Penfield v. Cleveland, etc., R. Co., 26 App. Div. 413–415, 50 N. Y. Supp. 79, per Cullen, J.; Smith v. Manhattan R. Co., 45 N. Y. St. Rep. 865, 18 N. Y. Supp. 759, affirmed 138 N. Y. 623, 33 N. E. 1083; English v. D. & H. C. Co., 66 N. Y. 454, 456, 23 Am. Rep. 69; Sanford Ad. v. Eighth Av. R. Co., 23 N. Y. 343, 346, 80 Am. Dec. 286.

In Smith v. Manhattan, supra, the court said:

"Undoubtedly the defendant has authority to enforce observance of its regulations, but by preventing not by punishing the breach of them."

In Sanford Ad. v. Eighth Av. R. Co., supra, the court said:

"The decision of the court below appears to have proceeded upon a rule of law which we think is inapplicable to the case. In the opinion of that court it is conceded that the conductor was guilty of negligence and improper conduct in expelling the passenger without stopping the car. But the latter was also in the wrong in occupying a seat without paying the fare, and the case was put as one of concurring negligence where the injured party is without redress, be-

cause he is himself in fault. We fail to see how this principle can be invoked. It cannot be applied to an intentional trespass, certainly not to a case like the present."

While a common carrier may, by reasonable rates and regulations, set apart particular cars or quarters for a particular class of persons, as for gentlemen accompanied by ladies and exclude gentlemen not attended by ladies therefrom (Peck v. N. Y. C. R. R. Co., 70 N. Y. 587; Bass v. Chicago, etc., R. Co., 36 Wis. 450, 17 Am. Rep. 495), still colored persons cannot be excluded from such a car merely on account of color. Chicago, etc., R. Co. v. Williams, 55 Ill. 185, 8 Am. Rep. 641; Brown v. Memphis, etc., R. Co. (C. C.) 5 Fed. 499. So here, this defendant had no right to relegate these plaintiffs to the steerage, if it had second-class accommodations (and the court charged the jury that, if it did not, plaintiffs were bound to go to the steerage), and as it announced to them that they must go there if they went at all, that is, that the accommodations to which they were entitled would not be accorded for the reason they were colored persons, they were not bound to surrender their tickets so long as that attitude was maintained. The action was as for a breach of contract, and in such a case, "If no actual damages are shown, the breach of the contract will authorize the recovery of nominal damages only; but the breach of the contract may also involve a tort—that is, a breach of the carrier's common-law duty; and in such case other damages than those incident to breach of contract may be recovered." 6 Cyc. 588; Sheldon v. Steamship Uncle Sam, 18 Cal. 526, 79 Am. Dec. 193; Runyan v. Central R. Co., 65 N. J. Law, 228, 47 Atl. 422.

The court charged the jury at defendant's request that if the plaintiffs boarded the ship, knowing she had no second-class accommodations, they were bound to accept what the ship offered. The evidence of the plaintiffs was to the effect that no demand was made for tickets or to exhibit tickets, although they exhibited theirs on going on board, until after they had got under way, and until after they had applied for breakfast at the second call, or call for second-class passengers, and been denied; that on applying for breakfast the ticket was shown, and they were informed by the steward at the dining room that he had orders from the captain not to feed them; that they could eat in the steerage, which they refused to do; that later the purser came along and called for tickets, and plaintiff said:

"Mr. Purser, you have not accommodated me, and I do not intend to give up my ticket. I intend to hold it as evidence against you. He said, 'You won't give your ticket up?' and I said 'not until you accommodate me.' He went and got the captain. Q. What did he say? A. He said, 'Why don't you give up your ticket?' I said, 'Mr. Captain, you have not accommodated me yet, and I refuse to give up my ticket, you refused to give me anything to eat,' and he swore, and he said, 'No God damned nigger is going to run my ship,' that is what he said. He says, 'You go into the steerage, or you get nothing here.' Those were his words to me, and I was sitting down at the time, and he kicked the stool from under me throwing me over. I said, 'Mr. Captain, you are taking advantage of me.' He said, 'I do not know whether I am or not. I am running this ship.' He said, 'You refuse to give up your ticket?' and I said, 'Yes, sir, until you accommodate me.' He called the first mate, and he told him to lock us up as stowaways," etc.

Also, that evening as they were in the smoking room, orderly and quiet, the captain came in and with force put one of them out in the cold. It was on this evidence, assuming the jury found it to be true, the court told them it was not the duty of the plaintiffs, as matter of law, to surrender their tickets. The court was requested to charge, and did charge, that "the plaintiff was not justified in retaining his ticket, against the demand of the purser and captain, for use as evidence in a possible lawsuit."

The court was requested to charge,

"Eighteenth. The rule of the company that meal tickets would be issued only on surrender of the passage ticket was a reasonable one, and plaintiff was bound by it. If he refused to surrender his ticket, he cannot now complain that he was refused meals."

In response the court said:

"It depends altogether, gentlemen, upon how you find the facts to be. That is true as a proposition of law generally, but, as I have already said to you, if plaintiff was notified in advance his ticket would not be honored, that they could only have meals in the steerage and accommodations in the steerage, because they were colored, when it called for second-class accommodations, and defendant had second-class accommodations, if that is true, then, of course, gentlemen, they had the right to retain it, not absolutely as a matter of law, but it would be a justification, and they would not forfeit their rights to a second-class passage and second-class accommodations because they refused to give up their ticket under such circumstances."

The jury was expressly told, at defendant's request, that plaintiffs were not entitled to second-class passage on every vessel of defendant's line, but only those which were then carrying second-class passengers. And the court had before stated only those which actually had second-class accommodations available, and also that if the Arapahoe was not carrying second-class passengers plaintiffs were entitled to steerage passage only. The court so charged. The court also charged the jury that the defendant was not bound to treat the plaintiffs as first or second class passengers unless they were willing to surrender their tickets for cancellation.

The court was requested to charge:

"Twenty-Sixth. From the moment that the defendant's agents demanded the surrender of the plaintiffs' tickets, and they refused to surrender them, the captain was justified as a matter of law in treating the plaintiffs as stowaways."

To that the court said:

"That I decline to charge. That would be true under the statement of the captain and purser, if you find that to be true; but under the evidence of the plaintiffs and the plaintiffs other witness, if you find that to be true, then the law is as I have stated. It depends, gentlemen, upon how you find the facts to be. Anything further, Mr. Pierce?"

The court also said:

"What is said, gentlemen, by the court and counsel in arguing questions of law, you are to pay no attention to. I have a perfect right to tell you what I think about the case, but I forbear doing so. I will tell you what the law is; you are bound by it, and you violate your oaths if you are not bound by it, and do not follow it. But the facts are for the jury. * * * Of course, what I said there, to which an exception was taken, what the court

would do—I think that if I were a colored man, I will reiterate here, if I bought a second-class ticket which called for second-class accommodations, and I was told that I had to go to the steerage simply because I was a colored man—I reiterate, if that is true, and it is a question of fact for you, I have a right to say I think I would refuse to surrender up my ticket, and I would not have much respect for any American citizen who refused to stand up for his rights and I would not have much respect for a juror who would not. But, gentlemen, that is not to affect you in the slightest degree. I express no opinion as to what the facts were. The facts are for you to determine, for you to decide, for you to settle. Was it as the captain and purser stated, or not?"

The jury was then instructed as to the burden of proof; cautioned not to be affected by sympathy for colored men or race, or prejudice against; not to be affected by any feeling or prejudice or hue and cry against corporations; and that they were sole judges of the facts.

I find no prejudicial error, and the motion to set aside the verdict and grant a new trial is denied.